IN THE MATTER OF THE CLAIM OF MRS. CHUN WONG CHEE (WIDOW OF CHUN CHEE, DECEASED,) FOR COMPENSATION *v.* YEE WO CHAN COMPANY AND EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED.

No. 1405.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED FEBRUARY 5, 1923.     DECIDED FEBRUARY 15, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

APPEAL AND ERROR—*findings of facts jury waived.*

The conclusions of fact or rulings of law included in the award of the industrial accident board are not binding upon the circuit court on appeal and the decision of the circuit court must find support, if at all, in the evidence adduced before it.

SAME—*decision of the court jury waived.*

The circuit court may in "stating its reasons" for its decision in jury-waived cases, as required by the provisions of section 2380, R. L. 1915, include by adoption or confirmation the conclusions of fact or rulings of law of the industrial accident board.

SAME—*erroneous findings by court jury waived.*

Where the evidence is not conflicting erroneous findings of fact by the trial court do not constitute reversible error. Upon that state of the case it is the duty of the court to disregard such findings and decide as a matter of law what the facts prove.

MASTER AND SERVANT—*injury to servant—Workmen's Compensation Act.*

To warrant compensation under the Workmen's Compensation Act it must appear that the workman received personal injury (1) by accident (2) arising out of and (3) in the course of his employment. All these essential elements must coexist. The absence of any one defeats compensation.

SAME—*same—same—"arising out of."*

For an accident to "arise out of employment" there must be

reasonably apparent a casual connection between the conditions under which the work is required to be performed and the resulting injury; that is, the injury must reasonably appear to have had its origin in a risk connected with or reasonably incidental to the work and to have flowed from that source as a rational consequence thereof.

SAME—*same—same—"course of employment."*

An accident arises in the "course of the employment" if it occurs while the employe is doing what a man so employed may reasonably do within the time during which he is employed and at a place where he may reasonably be during that time.

SAME—*same—same—"risk incidental to employment."*

A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.

SAME—*same—same—"accident."*

An accident is an unlooked for, untoward event which is not expected or designed.

SAME—*same—same—application for compensation—burden of proof.*

The burden of proof rests upon the applicant to establish all the facts necessary to entitle him to compensation under the Workmen's Compensation Act. Factors necessary to support the claim cannot be left to surmise, conjecture, guess or speculation. Nor will proof of facts equally consistent with a right to compensation and with the absence of such right be sufficient.

SAME—*same—same—construction.*

The provisions of the Workmen's Compensation Act should be liberally construed.

SAME—*same—same.*

Where one employed as a bill collector, while on his way afoot to collect a bill which his employer has instructed him to collect, accepts an invitation to ride the whole or a part of the way in a private automobile and in alighting therefrom accidentally receives injuries; and it appears that theretofore with the knowledge and without the objection of his employer the employe has been accustomed to use, among other means, public automobiles to travel from place to place to collect bills due his employer; such injuries arose "out of and in the course of the employment" of such employe.

SAME—*same—same—"out of employment."*

Where one undertakes an errand with the expressed intention

of going to a certain place for a certain purpose the unexplained discontinuance en route of the initial means of transportation does not imply an abandonment of such intention where other customary means of continuance of the errand are immediately available although less convenient. A motive or intention once shown to exist will be presumed to continue until the contrary is shown.

OPINION OF THE COURT BY PETERS, C. J.
(Perry, J., dissenting.)

This case arises out of a claim for compensation under the Workmen's Compensation Act made by the defendant in error in respect of the death of her husband. The industrial accident board awarded compensation and plaintiffs in error appealed to the first circuit court. The circuit court, after trial had jury waived, awarded compensation. Following is the court's decision omitting the award of the industrial accident board which the court quoted therein in full:

"Chun Chee, deceased, on August 12, 1921, was, and for some time prior thereto had been, employed as clerk and collector for Yee Wo Chan Company, general merchants doing business in Honolulu. On the date mentioned, Chun Chee, while riding in an automobile on his way to collect an overdue account for his employers, Yee Wo Chan Company, was thrown or fell from the automobile into the street, near the corner of King and Nuuanu streets, in Honolulu, receiving personal injuries from which he died the same day. The injuries thus received by him, as disclosed by the evidence adduced at the trial in this court, arose out of and in the course of his employment with Yee Wo Chan Company.

"The widow of the deceased, Mrs. Chun Wong Chee, on behalf of herself and her two minor children, having filed notice of the injury and death of her husband and also her claim for compensation with the Industrial Accident Board of the City and County of Honolulu, pursuant to Act 221 of the Laws of 1915 as amended by Act 227 of the Laws of 1917, and the board having heard and considered the claim, on January 11, 1922, duly made and

entered the following finding of facts and order:" (here follows in full the award of the industrial accident board)

"From the order thus made and entered by the board Yee Wo Chan Company and the Employers' Liability Assurance Company, Limited, of London, England, insurance carrier of Yee Wo Chan Company, appealed to this court; and trial by jury being waived the cause was heard by the court.

"Upon the evidence adduced at the hearing in this cause I find the facts to be the same in all respects as found and set forth in the order made and entered by the Industrial Accident Board, a copy of which is quoted above, and which order is hereby adopted and confirmed in all respects and the same is made a part of this decision."

Judgment was entered accordingly.

Plaintiffs in error assign the following errors of the trial court:

"1.　That the circuit court erred in finding and deciding that on August 12, 1921, Chun Chee, while riding in an automobile on his way to collect an overdue account for his employer, Yee Wo Chan Company, was thrown or fell from the automobile into the street.

"2.　That the circuit court erred in finding and deciding that the injuries thus received by him (Chun Chee) as disclosed by the evidence adduced at the trial in said court, arose out of and in course of his employment with Yee Wo Chan Company.

"3.　That the circuit court erred in finding that facts shown by the evidence adduced in said court were the same in all respects as found and set forth in the order made and entered by the Industrial Accident Board.

"4.　That the circuit court erred in adopting and confirming the said order.

"5.　That the circuit court erred in rendering and entering its judgment on the 19th day of April, 1922, in favor of the claimant and against Yee Wo Chan Company and Employers' Liability Assurance Corporation, Limited, to recover compensation in a sum not to exceed $5,000."

The third and fourth assignments of error need be considered only so far as they involve assignments of error 1 and 2. The conclusions of fact or rulings of law included in the award of the industrial accident board are not binding upon the circuit court on appeal and the decision of the circuit court must find support, if at all, in the evidence adduced before it. The court may, however, in "stating its reasons" for its decision required by the provisions of section 2380, R. L. 1915, include by adoption or confirmation the conclusions of fact or rulings of law of the industrial accident board. So long as the circuit court, when rendering its decision jury waived, states its reasons therefor, it makes no difference whether those reasons are set forth independently of or by reference to and in confirmation of the award of the industrial accident board.

Assignment 1. That the deceased immediately prior to the accident was "riding in an automobile on his way to collect an overdue account for his employers Yee Wo Chan Company," is amply sustained by the evidence. The deceased at the time of the accident was employed as a salesman and collector by Yee Wo Chan Company of Honolulu, his hours of employment being from 8 a. m. to 9 p. m. The accident happened at about 6 p. m. On the morning of the day of the accident he had been instructed by the manager of Yee Wo Chan Company to collect an overdue bill of a customer living in Manoa, to which he replied that he was then too busy but would do so after dinner. A few minutes before the accident the deceased, while on King street near Maunakea street, was invited by a friend, driving a private automobile along King street toward Nuuanu street, to ride with him. The deceased accepted the invitation and after getting into the automobile informed his friend that he was on his way to Circle lane where the company's automobile was being re-

paired, from which place he was going to Manoa to collect a bill. Circle lane runs northerly from Beretania street between Punchbowl and Alapai streets and is on a direct line from the point where the deceased got into the automobile to Manoa. The automobile with the deceased as a passenger continued along King street to Nuuanu. It was while the automobile was turning northerly into Nuuanu street that the accident happened.

The finding that the deceased "was thrown or fell from the automobile" is not sustained by the evidence. This does not mean, however, that plaintiffs in error by reason thereof are entitled to a new trial. The court's finding may admit of the inference that the proximate cause of the injury was not the mishap that occurred while the deceased was alighting from the automobile but due to other causes over which the deceased had no control—in other words, that the deceased had not intended to leave the automobile but had intended to continue with it and was prevented from so doing by circumstances other than his voluntary act. The impression entertained by the trial court that the deceased was thrown or fell from the automobile may have influenced it in holding that the accident arose out of and in the course of his employment. However that may be, where, as here, the evidence is not conflicting, erroneous findings of fact by the trial court do not constitute reversible error. Upon that state of the case it is the duty of this court to disregard such findings and decide as a matter of law what the facts prove. *Hedge* v. *Williams*, 63 Pac. (Cal.) 721-723. See also *Hendrie & Bolthoff Mfg. Co.* v. *Collins*, 56 Pac. (Colo.) 815, 816, 817.

The only reasonable deduction of which the evidence is capable is that the deceased, as the automobile was turning northerly into Nuuanu street at the intersection of King and Nuuanu streets, got up from the rear seat of

the automobile in which he had been riding, climbed over the right rear door onto the running-board and in attempting to alight therefrom missed his step and fell backward sustaining the injuries that caused his death. In other words, the proximate cause of the injury was the mishap which occurred while leaving the automobile.

This brings us to the question of whether the injuries which caused his death were as a matter of law received by the deceased by accident arising out of and in the course of his employment.

Assignment 2. The Workmen's Compensation Act provides compensation to workmen and their dependents in the event of personal injury to the former by accident arising out of and in the scope of their employment. (Act 221, S. L. 1915 as amended by Act 227, S. L. 1917.) Section 1 of the act provides: "Employments covered. This act shall apply to any and all industrial employment, as hereinafter defined. If a workman receives personal injury by accident arising out of and in the course of such employment * * *, his employer or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified." No question is raised by the plaintiffs in error as to the status of the deceased at the time of the accident as an employe of Yee Wo Chan Company or that his employment was industrial. Nor can there be any question but that the injury was the result of accident and not the result either of the employe's wilful intention to injure himself or of his intoxication, in either of which cases exemption is granted the employer, when claimed by the latter, under the provisions of section 3 of the act.

To warrant compensation under the Workmen's Compensation Act it must appear that the workman personally received injury (1) by accident (2) arising out of and (3) in the course of his employment. All of these

essential elements must coexist at the time of the accident.
The absence of any one defeats compensation. This may
be best expressed by a quotation from the opinion of the
New Jersey supreme court in the case of *Bryant* v. *Fissell*,
86 Atl. 458, 459: "Even though the injury arose out of
and in the course of the employment, if it be not an 'acci-
dent' within the purview of the act there can be no re-
covery. Even if there be an accident which occurred 'in
the course of' the employment, if it did not arise 'out of
the employment,' there can be no recovery; and even
though there be an accident which arose 'out of the em-
ployment,' if it did not arise 'in the course of the employ-
ment,' there can be no recovery. *Fitzgerald* v. *Clarke &
Son* (1908), 2 K. B. 796; *Craske* v. *Wigan* (1909), 2
K. B. 635." For an accident to "arise out of employ-
ment" there must be reasonably apparent a casual con-
nection between the conditions under which the work is
required to be performed and the resulting injury; that
is, the injury must reasonably appear to have had its ori-
gin in a risk connected with or reasonably incidental to
the work and to have flowed from that source as a rational
consequence thereof.

"It" (the injury) "arises 'out of' the employment,
when there is apparent to the rational mind upon con-
sideration of all of the circumstances, a casual connection
between the conditions under which the work is required
to be performed and the resulting injury.  *  *  *  It need
not have been foreseen or expected, but after the event it
must appear to have had its origin in a risk connected
with the employment, and to have flowed from that source
as a rational consequence."

*In re Employers' Liability Assur. Corp.* 102 N. E.
(Mass.) 697.

"  *  *  *  an accident arises 'in the course of the em-
ployment' if it occurs while the employe is doing what a
man so employed may reasonably do within a time during

which he is employed, and at a place where he may reasonably be during that time."

*Bryant* v. *Fissell, supra.*

As was said by Buckley, L. J., in *Fitzgerald* v. *Clarke & Son,* quoted in the *Bryant* case: "The words 'out of' point, I think, to the origin and cause of the accident; the words 'in the course of,' to the time, place, and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment."

"A risk is incidental to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service."

"An accident is an unlooked for and untoward event which is not expected or designed.".

The "course" of the employe's employment refers not only to those acts which he is expressly or impliedly authorized to do by his contract of employment but also refers to those things that he is entitled to do by virtue of said contract. The test is not "scope" of employment but "course" of employment. The latter term is much broader than the former.

"It seems to be generally held by the English courts that employment is not necessarily synchronous with contract of service, but that, in all those things that he is entitled to do by virtue of his contract he is for the purposes of the act employed to do, and they are therefore within his contract of employment."

*Industrial Commission* v. *Aetna Life Ins. Co.,* 174 Pac. (Colo.) 589, 591.

The burden of proof rests upon the applicant to establish all the facts necessary to entitle him to compensation under the Workmen's Compensation Act. Factors necessary to support the claim cannot be left to surmise, conjecture, guess or speculation. Nor will proof of facts equally consistent with a right to compensation and with the absence of such right be sufficient. *In re Savage*, 222 Mass. 205, 110 N. E. 283; *In re Sponatski*, 108 N. E. (Mass.) 466; *Plumb* v. *Cobden Flour Mills*, L. R. (1914) App. Cas. 62; *Morris* v. *Industrial Commission*, 295 Ill. 49, 128 N. E. 727; *Dulac* v. *Dumbarton Woolen Mills*, 112 Atl. (Me.) 710-713; *C. & A. R. R. Co.* v. *Industrial Board*, 274 Ill. 336, 113 N. E. 629; *Bryant* v. *Fissell*, *supra; Albaugh-Dover Co.* v. *Industrial Board*, 278 Ill. 179, 115 N. E. 834, 835.

The terms of the act, however, should not be so construed that its intent or the purposes it is designed to accomplish be unreasonably limited. The act should be liberally construed. As said in *Zappala* v. *Industrial Ins. Com.*, 82 Wash. 314, 144 Pac. 54: "In construing the language of the act we must have in mind the evident purpose and intent of the act to provide compensation for workmen injured in hazardous undertakings reaching 'every injury sustained by a workman engaged in any such industry; and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received' (*State ex rel. Davis-Smith Co.* v. *Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466), and that the act should be liberally interpreted, to the end that the purpose of the legislature in suppressing the mischief and advancing the remedy be promoted even to the inclusion of cases within the reason although outside the letter of the statute, and that every hazardous industry within the purview of the act should bear the burden arising out of in-

juries to its employees regardless of the cause of the injury."

"Our courts are in agreement that these acts should be broadly and liberally construed, to the end that their beneficent intent and purpose may be reasonably accomplished."

*Industrial Commission* v. *Aetna Life Ins. Co., supra.*

The deceased was employed to collect bills. To collect bills he must necessarily move about from place to place. When the debtor lived at a distance from the place of his employment he was accustomed to use the street-cars or hire an automobile. This was known to his employer and no objection thereto was made by it. Hence he was entitled to use an automobile. What he was entitled to use by virtue of his employment he was employed to use and the use of an automobile was within his contract of employment. Moreover, the risks attendant upon the use of private automobiles are no greater than those attendant upon the use of public automobiles. That the use of a private automobile was gratuitous is immaterial. The instrumentality and not the circumstances of its procurement controls.

In the case of *Industrial Commission* v. *Aetna Life Ins. Co., supra,* the deceased workman was employed as a foreman of a contracting company; having completed his work as foreman in connection with the erection of a telephone exchange at Afton, Wyoming, he started for his next job, which was at Montpelier, Idaho; he intended to leave Afton by the regular stage running to Montpelier but for some reason missed the stage and was invited to ride to an adjoining town and there catch a train for Montpelier; the automobile was privately owned and operated by an acquaintance and he was invited to take the trip as a guest, no payment of compensation being expected. The employer resisted compensation upon the ground that it did not appear that the action arose out of

and in the course of the employe's employment. The court said: "In the case at bar it was an essential part of his employment that the deceased should travel from the place where he had installed one plant to the place where he was to install another. It is also clear that he adopted a reasonable and apparently the only facility for such travel under the circumstances, and as safe as any other that may have been available. No case is cited that adopts a different rule, and we know of none, as applied to workmen's compensation statutes."

In *Beaudry* v. *Watkins,* 158 N. W. (Mich.) 16, it appeared that the deceased workman was employed as a delivery boy and was furnished a bicycle with which to do his work. While in the course of his employment he caught on the right rear end of a motor-truck proceeding in the same direction; the truck making a sudden turn the boy was thrown to the pavement and run over by a truck immediately to the rear. The Michigan statute provided: "After it is shown that the accident happened within the time during which he is employed, and at the place where he may reasonably be during that time, that is, within the period and the scope of the employment, the workman must also show that it was a risk incident to the employment; that it arose because of something he was doing in the course of his employment, or because he was exposed by reason of the peculiar nature of his employment to the particular hazard which caused the injury." The employer resisted the compensation upon the ground that the deceased did not receive personal injury arising out of and in the scope of his employment —that as the accident happened due to the decedent taking hold of the truck there could be no liability. The court sustained the action of the industrial accident board awarding compensation.

In the *Travelers' Ins. Co.* v. *Spalding,* 1 Cal. I. A. C.

575, the injured employe (a traveling salesman) was invited by some friends to take a ride in an automobile, to which he responded that if they would go to Pleasanton where he wished to sell some goods he would do so. His friends took him to Pleasanton where he looked up certain prospective customers. While in Pleasanton the automobile, while turning, went into a ditch and the employe was injured. The industrial accident board in awarding compensation said: "The principal question raised by this application is as to whether or not Mr. Barnett was acting in the course of his employment at the time of the injury, he being engaged in taking an automobile ride in the evening. The commision is of the opinion that, at the time of his accident, he was within the course of his employment. A traveling salesman does not have regular hours of work each day; he must see his customers when they can best be found, either in the day time or in the evening. Mr. Barnett was actually going to Pleasanton on the business of his employer at the time of his injury. The risk of accidents by the wrecking of trains, street cars, automobiles or other means of conveyance which traveling salesmen must use in carrying on their business is one clearly incidental to their employment."

Plaintiffs in error place considerable reliance upon *State ex rel. Miller* v. *District Court,* 164 N. W. (Minn.) 1012. The facts of that case as disclosed by the application for compensation are in substance these: Plaintiff, seventeen years old, was in the employ of defendant as a messenger at $7 a week. In this work he was provided with carfare when the distance to carry the message was considerable but not when the distance was as short as the one from defendant's place of business to the Shubert theatre, or five blocks. On the afternoon of the day he was injured the boy was sent by his employer to the Shubert theatre for tickets. While returning to his place of

employment he climbed upon an automobile truck which was proceeding in the same direction and while so riding he slipped on a roller upon the floor of the truck, became entangled in the gears thereof and was severely injured. The excuse given by the boy for riding on the truck was that he was unusually busy that day and used the truck in his haste to return to the office to continue his duties. The court held that while no doubt the boy was injured in the course of his employment the injury did not arise out of his employment upon the theory that since the boy was provided with carfare when the messages were to go beyond a certain distance he was to walk on all other occasions and therefore when he sought other methods by which to accomplish his tasks he departed from the scope or ambit of his employment and while so doing was not protected by the compensation act.

That case, however, is clearly distinguishable from the case at bar. The boy's contract apparently contemplated that in covering distances over five blocks he be furnished with carfare, and that the street-cars under such circumstances were to be used exclusively by him. He was neither authorized nor to the knowledge of his employer accustomed to use automobile trucks. In the use of the truck new and additional risks were involved due to the character of the instrumentality employed. In the instant case not alone was the deceased accustomed to use automobiles but their use was known to his employer and no objection was made thereto. That the use of the automobile was gratuitous instead of for hire did not increase the risk.

The *Miller* case is no different in reason than that of *DeCosta's* case, 135 N. E. (Mass.) 135, cited by plaintiffs in error. In that case the injured employe was in the service of the town of Rockland as a janitor at a public schoolhouse; his duties included supervision of the con-

dition of the building and whatever was required for its proper up-keep; at the time of his injury the outside of the schoolhouse was being painted and the painters in connection with their work had erected a staging about fifteen feet above the ground connected therewith by a ladder; the janitor went upon the staging by way of the ladder to examine the painting; when he decided to return to the ground he saw one of the painters standing near the foot of the ladder, apparently upon the bottom round, so the janitor proceeded to slide down a rope which was fastened to the staging; when about six feet from the ground his hands slipped and he fell fracturing a bone in his left heel. The court refused compensation upon the ground that the injury did not arise out of the janitor's employment. But were ropes the usual and ordinary means of descending and were the janitor, with the knowledge and without the objection of those in authority, accustomed to use such means then the risks attendant to such use would be the ordinary and usual risks incident to the janitor's employment and when injured the injury would arise "out of" the employment.

The same may be said of the suppositional case presented by plaintiffs in error of a bank messenger desiring to go from the Bank of Hawaii to the bank of Bishop & Company traveling over the roofs of the intermediate buildings. Such means of travel are not the ordinary and usual ones employed in such service and the risks attending such a method are not the risks ordinarily incidental to traveling from one bank to the other. Injuries sustained while taking the air route would not arise out of the messenger's employment.

The claim that "skylarking" of the deceased was the proximate cause of the injury and that hence his injuries did not arise "out of" his employment has no foundation in fact. As heretofore stated the undisputed evidence is

that the injury occurred while the deceased was alighting from the automobile. That preparatory to so doing he climbed over the door instead of proceeding by the ordinary method is immaterial. He apparently gained the running-board in safety and the manner of his exit even if it could be characterized as "skylarking" was not a contributing cause of the injury.

The claim is also made that the injuries did not arise "out of" the employment of the deceased due to the hazardous methods employed by him in leaving the automobile. The circumstance of climbing over the rear door has already been disposed of as immaterial. There remains the additional fact of his stepping from a car while in motion. The most that can be said of the act of the deceased in stepping from the automobile while it was in motion is that he was guilty of negligence. That such negligence was the proximate cause of the injury does not however bar his dependents of the right to compensation. Nor can it be said that due to his failure to require that the automobile be first brought to a standstill before alighting and in stepping therefrom while in motion he assumed a risk not contemplated by his contract of employment. It is a matter of common knowledge that passengers frequently board and leave automobiles while in motion. According to the undisputed evidence the automobile in turning at the intersection of King and Nuuanu streets was traveling at a moderate rate of speed. And the conclusion is inevitable that the risk of injury in leaving the automobile while in motion was a risk incidental to his employment and the resulting injury arose "out of" his employment.

From what has been previously said it is obvious that the deceased at the time of injury was not, as claimed by plaintiffs in error, on his way to work but was in the

course of his employment.   We deem further discussion
of this point unnecessary.

We therefore conclude that where one employed as a
bill collector, while on his way afoot to collect a bill
which his employer has instructed him to collect, accepts
an invitation to ride the whole or a part of the way in a
private automobile and in alighting therefrom accidentally
receives injuries and it appears that theretofore with the
knowledge and without the objection of his employer the
employe had been accustomed to use, among other means,
public automobiles to travel from place to place to collect
bills due his employer such injuries arose out of and in
the course of such employment.   The use of an automo-
bile naturally includes getting in and out of it.   That
one does so negligently may constitute contributory negli-
gence.   But contributory negligence is no defense to a
claim for compensation.   The evidence is not clear upon
the point as to how far the driver of the automobile in-
tended to carry his passenger but if he had carried the
deceased the whole way to the house of the debtor and
the deceased in getting out of or alighting from the auto-
mobile, whether while exercising due care or under cir-
cumstances convicting him of contributory negligence, had
been injured, it could not be denied that the injuries re-
ceived arose out of and in the course of the employment
of the deceased.   The fact that the deceased left the auto-
mobile at the corner of King and Nuuanu streets does
not in our opinion alter the situation an iota.   He was
still on a direct line to Manoa.   The street-cars which
could carry him to Manoa were immediately available.
That this means of travel was less convenient is imma-
terial.   Within but a few minutes prior to his leaving
the automobile he had announced to his friend his inten-
tion of going to Manoa to collect a bill due his employer.
His act of leaving the automobile was not inconsistent

with such intention. On the contrary it was consistent
therewith and in the absence of evidence to the contrary
we must assume that he left the automobile with the in-
tention of going to Manoa to collect this account due his
employer. Where one undertakes an errand with the ex-
pressed intention of going to a certain place for a certain
purpose the unexplained discontinuance en route of the
initial means of transportation does not imply an aban-
donment of such intention where other customary means
of continuance of the errand are immediately available
although less convenient. The motive or intention once
shown to exist will be presumed to continue until the
contrary is shown.

The foregoing disposes of assignment of error num-
ber 5.

The judgment of the circuit court is affirmed.

*A. L. Castle (Robertson & Castle* on the brief) for
plaintiffs in error.

*I. M. Stainback* for defendant in error.

### DISSENTING OPINION OF PERRY, J.

The trial judge found, *inter alia,* that Chun Chee, the
decedent, "while riding in an automobile on his way to
collect an overdue account for his employers, Yee Wo
Chan Company, was thrown or fell from the automobile
into the street * * * receiving personal injuries from
which he died the same day." There was absolutely no
evidence before the court to support the finding that the
deceased "was thrown or fell" from the automobile. The
undisputed evidence and the only evidence was that,
either by stepping over the rear door or by passing out
through that door, he successfully reached the running-
board of the machine and from that board deliberately
stepped to the street while the machine was still in mo-
tion (although only at a moderate rate of speed), and

that in so stepping off he missed his footing, fell to the ground and was killed. The ruling of the trial court that the injuries of the decedent "arose out of and in the course of his employment with Yee Wo Chan Company" undoubtedly was based upon its finding that the decedent "was thrown or fell" from the machine. The finding as made clearly was that the decedent left the automobile *by accident and unintentionally*, while pursuing his purpose to collect his employer's bill in Manoa and if the finding had been supportable upon the evidence the ruling as made would have been correct that the injuries arose out of and in the course of the employment. It is clear that contributory negligence on the part of the decedent, if there was negligence on his part contributing to his falling or being thrown out of the automobile, would not be a defense to the present petitioner's claim for compensation for the death.

But as above stated, the evidence did not permit of the finding as made. It required a finding that the decedent left the machine of his direct volition and not by accident. The missing of his foothold on the street when he reached it was by accident and perhaps was due to his negligence but there again that mere negligence would not be a defense to the suit for compensation. A very different question, however, of fact mixed with law, arises at this point as to whether the injury and the death arose out of the employment. In leaving the automobile, was the decedent still intending to proceed to Manoa to collect his employer's bill or was he thereby abandoning that intention? The evidence of Kahele, the driver of the machine, was that at the corner of King and Maunakea streets "I picked him up on the car and he asked me to give him a ride to Circle lane, * * * for the purpose of getting his car, then from there he would go to collect a bill at Manoa." It was certainly possible for the trial court to

find upon this evidence that in starting upon the ride in this machine at King and Maunakea streets the decedent intended to go to Circle lane, to there get his employer's automobile and then from that point to proceed to Manoa to collect the bill.   It was also easily permissible for the court to infer from that evidence that Kahele undertook, with the decedent's knowledge, to take the decedent on that trip to Circle lane.   At this juncture it is claimed that, it appearing from the evidence that in entering upon this trip in this automobile the decedent intended to go to Manoa for the purpose stated, there is a presumption that that intention continued.   It is true that an intention once shown to exist is presumed to continue but there are limitations to this rule or theory.   One of them is that the preexisting intention is presumed to continue only for that length of time during which such intentions ordinarily continue in view of the particular surrounding circumstances.   Another is that the presumption is not conclusive but is rebuttable and that it may be rebutted either by express evidence to the contrary or by evidence susceptible of an inference to the contrary.

"When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance at a later period.   The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end.   The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case in hand. That a soap-bubble was in existence half-an-hour ago affords no inference at all that it is in existence now;   that Mt. Everest was in existence ten years ago is strong evidence that it exists yet;   whether the fact of a tree's existence a year ago will indicate its continued existence today will vary according to the nature of the tree and the con-

ditions of life in the region. So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control." 1 Wigmore on Evidence, Sec. 437.

Between the extremes, mentioned by the author, of the soap-bubble and the huge mountain, many things, conditions and qualities can be imagined of varying degrees of probability of endurance; and just in the measure that this quality of endurance becomes less, so also the weight to be given to the supposition or presumption of continued existence is entitled to less weight.

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, *within logical limits,*" (underscoring mine) "that it exists at a subsequent time." 22 C. J. 86.

"When the existence of a * * * state of things is once established by proof, the law presumes that the * * * state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." 10 R. C. L. 872.

"That no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is evidential, is sufficiently illustrated by the precedents, from which it is impossible (and rightly so) to draw a general rule." 1 Wigmore on Evidence, Sec. 437.

Conceding then the general rule that there is a presumption of continued existence of an intention, subject to the limitations above mentioned and perhaps others, the question as to what weight shall be given to that presumption in a particular case or as to whether the presumption shall be indulged in at all under the circumstances of a particular case because of the lapse of time and without any other apparently rebutting circumstances or as to whether other circumstances or evidence in the case sufficiently rebut this presumption or

show that the intention once existing no longer exists, is one for the trial court to determine if the evidence permits of more than one conclusion of fact. "The matter should be left entirely to the court's discretion." 1 Wigmore on Evidence, Sec. 437, quoted with approval in *National Bank* v. *Benson*, 33 S. D. 399, 405. "It is a matter resting largely in the discretion of the trial court whether and to what extent the presumption of the continuance of existing conditions should be entertained." 22 C. J. 87. In the case at bar it was legally possible for the court to find upon the evidence that not only did the decedent ask Kahele "to give him a ride to Circle lane" but also that Kahele acquiesced in giving him a ride to Circle lane and that the decedent was immediately made aware of that acquiescence, in other words, it was possible for the trial court to have found upon the evidence that the decedent in starting upon the ride believed that Kahele in driving the machine was then and there taking him to Circle lane and further to find that at no time prior to the injuries did Kahele withdraw that acquiescence or inform the decedent of any change of purpose on his (Kahele's) part. We have then the case of a man who starts out intending to collect a bill at Manoa, enjoying a free ride at the hands of a friend in a comfortable and ordinarily speedy automobile and who, while the driver is proceeding along one of two equally available routes to Circle lane (the route along Nuuanu and Beretania was not any longer than the route along King and Punchbowl, and, referring to the nature of the highway, was at least equally comfortable), without a word of warning to his friend, the driver, deliberately leaves the machine. Is not this evidence and are not these facts susceptible of the inference of fact that in so leaving the machine the decedent was abandoning his original intention to proceed to Manoa to collect the bill? In my opinion it certainly is suscep-

tible of that inference.  To my mind it is easily the stronger inference of the two possible inferences, for I appreciate that the facts are susceptible also of the inference that in so leaving the automobile the decedent was adhering to his intention of going to Manoa for the purpose stated and was merely altering his mode of travel.  Can it not be argued with force that there is no probability that this man surrendered his free, comfortable and speedy method of transportation by automobile in order to walk the whole distance to Circle lane or in order to proceed by the much slower method of street-car travel with the added possibility and perhaps probability of an enforced wait of as much as ten minutes for the next street-car to come along or, let it be even considered, in order to proceed by another automobile?  It seems to me that such an argument is not only legally permissible under the circumstances but that it is more forceful than the argument that the stepping off from the automobile was purely for the purpose of altering the method of travel while still adhering to the intention to go to Manoa.

The trial judge having made a finding of fact which is not supported by any evidence and it being a material finding and no finding having been made by the trial judge concerning abandonment or non-abandonment of intention to collect the bill, upon or with reference to the only fact permitted by the evidence of the decedent's having of his own volition left the automobile, the case ought, in my opinion, to be remanded to the trial judge in order to permit him to make a finding upon this disputed and material issue of fact (whether with or without permission to both parties to introduce further evidence is something which it would be unprofitable to now discuss in view of the opinion of the majority that the judgment must be affirmed).  It is not competent for this court in such a case as this to pass upon issues of fact where the evidence

permits of more than one inference being drawn from other facts proven. That power and that duty rest with the trial court. The statute (R. L. Sec. 2380) requiring the trial court in a jury-waived case to render its decision, both as to the facts and the law, in writing and to state its reasons therefor, was intended to meet just such a situation as this where the trial court makes non-supportable findings of fact upon material points and does not make findings of fact upon other material points upon disputed evidence or inferences. Without that statute it might have been necessary for the appellate court in such a case as this to indulge in the presumption that the judgment appealed from was correct and therefore to indulge in the further presumption, in reality unfounded, that all findings of fact were made which ought to have been made in order to support the judgment rendered. Under the present statute such an unfortunate result need not occur.

The judgment appealed from ought to be set aside and the cause remanded to the trial court for further proceedings not inconsistent with these views.