159 P.3d 143

CITIZENS AGAINST RECKLESS DE-VELOPMENT, an unincorporated association; Doris Nakamura; and United Food & Commercial Workers Union Local 480, Appellants–Appellants,

v.

ZONING BOARD OF APPEALS OF the CITY AND COUNTY OF HONOLULU; David Minkin, in his capacity as Chair of the Zoning Board of Appeals of the City and County of Honolulu; Henry Eng, in his capacity as Director of the Department of Planning and Permitting of the City and County of Honolulu;[1] and Wal–Mart Real Estate Business Trust, a Delaware Business Trust, Appellees–Appellees.

No. 27264.

Supreme Court of Hawai'i.

May 31, 2007.

**1.** Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c) (2000), David Minkin, the current Chair of the ZBA, has been substituted for Brian Tsujimura and Henry Eng, current Director of the DPP, for Eric G. Crispin.

James J. Bickerton and K. Bartlett Durand, Jr. (of Bickerton Saunders Dang & Sullivan), Honolulu, on the briefs, for appellants-appellants Citizens Against Reckless Development, an unincorporated association; Doris Nakamura; and United Food & Commercial Workers Union Local 480.

C. Michael Heihre, Kelly G. Laporte, and Allison M. Mizuo (of Cades Schutte), Honolulu, on the briefs, for appellee-appellee Wal–Mart Real Estate Business Trust.

Lori K.K. Sunakoda, Deputy Corporation Counsel, on the briefs, for appellee-appellee Henry Eng.

Dawn D.M. Spurlin, Deputy Corporation Counsel, on the briefs, for Zoning Board of Appeals of the City and County of Honolulu and David J. Minkin.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge WONG, in Place of ACOBA, J., Recused.

Opinion of the Court by DUFFY, J.

Appellants-appellants Citizens Against Reckless Development, an unincorporated association; Doris Nakamura; and United Foods & Commercial Workers Union Local 480 (Local 480) [hereinafter, collectively, CARD] appeal from the March 30, 2005 final judgment of the Circuit Court of the First Circuit,[2] which affirmed the decision and order of the Zoning Board of Appeals of the City and County of Honolulu (ZBA) dismissing Case Number 2003/ZBA-9, and entered judgment in favor of Appellees ZBA, David Minkin, in his capacity as Chair of the ZBA, Henry Eng, in his capacity as Director of the Department of Planning and Permitting (DPP), and the Wal-Mart Real Estate Business Trust (Wal-Mart). This case concerns the appropriate procedural options a third-party may take to challenge the issuance of a Conditional Use Permit (CUP) by the DPP.

On appeal, CARD argues that: (1) a petition for a declaratory ruling is a proper procedure for appealing an action of the director of the DPP; (2) the circuit court erred insofar as it upheld the Director's action because the petition did not seek the determination of a *prospective* action; (3) the circuit court erred in applying the doctrine of laches to find that CARD's petition for a declaratory ruling was untimely; and (4) the circuit court erred in upholding the Director's action on the basis of DPP Rules of Practice and Procedure Rule (Department Rule or DPP Rule) Section 3-5(3).

Based on the following, we affirm the circuit court's March 30, 2005 final judgment.

## I. BACKGROUND

This case comes before this court after a series of challenges by CARD to the DPP's issuance of a CUP to Wal-Mart for a commercial development on the Keeaumoku "Superblock" site. Underlying all of CARD's actions (review processes within the DPP, appeals to the ZBA, and suits filed in the circuit court) is its contention that the DPP improperly accepted and approved Wal-Mart's application for a CUP, because the DPP violated several provisions of the Land Use Ordinance (LUO), Revised Ordinances of Honolulu chapter 21.[3]

The present action does not concern the merits of this claim; rather, it concerns CARD's attempt to use the declaratory ruling procedure—required by law under Hawai'i Revised Statutes (HRS) § 91-8 and implemented by the DPP through DPP Rules chapter 3[4]—to challenge the decision of the Director of the DPP to issue the CUP in question.

### A. *Actions of the Parties Preceding the Motion for Declaratory Ruling*

The relevant background of this suit and related litigation of the parties is drawn from the factual summary made by the circuit court in its March 30, 2005 Findings of Fact, Conclusions of Law, and Order Affirming the Decision and Order of the Zoning Board of Appeals in Case Number 2003/ZBA-9.

### 1. Wal-Mart's application for the CUP

Findings of Fact nos. 1-14 relate to Wal-Mart's application for, and the subsequent approval of, a CUP application, as well as its communications with the public regarding

---

**2.** The Honorable Eden Elizabeth Hifo presided over this matter.

**3.** Various sections of the LUO pertain to CUPs. As stated in LUO § 21-2.90, "Conditional use permit—Purpose and intent,": "(a) The purpose of this section is to establish a procedure for permitting certain uses in some zoning districts if certain minimum standards and conditions, which are detailed in Article 5 [Specific Use

Development Standards], are met." The procedures for filing a CUP application are detailed in LUO § 21-2.90-1, "Application requirements." LUO § 21-2.90-2, entitled "General requirements," describes the criteria that guide the director in evaluating CUP applications.

**4.** *See infra* Section III.B. and note 12.

the status of its development plans from May to September of 2002:

1. Wal–Mart sought to construct a Sam's Club and Wal–Mart store (the "Project") on real property designated as Tax Map Key Nos. 2–3–016:09 & 43 (the "Keeaumoku Site"), which is in the "BMX–3—Business Mixed Use" commercial district in Honolulu, Hawai'i.

2. Wal–Mart informed the public of its plans to develop the Project on the Keeaumoku Site on May 3, 2002, approximately five months before it commenced construction activities on the Keeaumoku Site.

3. Wal–Mart representatives also attended numerous neighborhood board meetings of the Ala Moana/Kakaako Neighborhood Board (the "Neighborhood Board") in May, June, July, August, and September of 2002 in an effort to keep the public apprised of its construction plans. At these meetings, among other things, Wal–Mart representatives displayed conceptual drawings of the proposed Project, and indicated that groundbreaking would occur in late September or October of 2002. CARD members attended every one of these Neighborhood Board meetings.

4. On July 24, 2002, Wal–Mart applied to the Department of Planning and Permitting ("Department") for a new Conditional Use Permit (minor) ("CUP") for the joint development of adjacent zoning lots comprising the Project at the Keeaumoku Site.

5. At the Neighborhood Board meeting conducted on August 27, 2002, Wal–Mart's contractor specifically reported that Wal–Mart was "going through the permitting process."

6. The Director approved Wal–Mart's application and issued CUP No. 2002/CUP–54 on August 7, 2002.

7. Wal–Mart received notice of the issuance of the CUP on August 9, 2002.

8. On September 19, 2002, a foundation permit application was submitted to the Department to construct the Project.

9. Following receipt of the CUP, Wal–Mart commenced construction of the Project in September 2002 by beginning to erect a construction fence around the Keeaumoku Site on September 16, 2002.

10. As the September 24, 2002 Neighborhood Board meeting, a Wal–Mart representative announced that "[t]hey have begun to fence the property."

11. Department Rule § 6.2, entitled "Notice of Decision," provides that "[t]he Director shall mail the written decision to the applicant and, upon request, shall give notice of the decision to other interested persons. The decision shall be available for review by the public at the department of planning and permitting."

12. At no time before October 2002 did any CARD member request the Department to provide the members with notice of any decision regarding the Project pursuant to Department Rule § 6.2.

13. At no time before October 2002 did any CARD member review the public files regarding the Project at the Department.

14. On October 16, 2002, Mr. Mark Wolfe ("Mr. Wolfe"), a California attorney who represents other groups who oppose Wal–Mart stores in other jurisdictions, personally went to the Department on behalf of CARD member United Food & Commercial Workers Union Local 480 ("Local 480") and submitted a request to review Wal–Mart's CUP File: File # "2002–CUP–54." That same day, Mr. Wolfe also submitted a Request for Access to Public Records to the Department for the Keeaumoku Site on behalf of CARD member Local 480 to inspect "all correspondence in file since Jan. 1, 2002 both inspector's corr. & misc. corr." Responding to this request, on October 23, 2002 the Department faxed to CARD member Local 480 a copy of the job file index for the subject parcels that indicated the Department issued the CUP on August 8, 2002.

### 2. The "October Appeal": CARD's first appeal of the approval of Wal–Mart's CUP

On October 21, 2002, CARD brought its first complaint to the attention of the ZBA:

15. By a letter dated October 21, 2002 addressed to Mayor Jeremy Harris, the Honolulu City Council, and the ZBA, CARD initiated its first appeal (the "Octo-

ber 2002 Appeal" or "Case No. 2002/ZBA–2"), wherein it alleged generally that the Project was inconsistent with applicable zoning requirements, and argued, among other things, that: (1) the Project conflicts with the zoning requirements of the LUO; (2) the Project will have an adverse impact on the environment and public health and an environmental impact statement must be prepared; (3) the Project will have economic, social, and fiscal impacts on the surrounding community and an economic study must be prepared; and (4) the Project conflicts with visions and policies of the Honolulu Primary Urban Center Development Plan.

16. On November 20, 2002, the Director moved to dismiss CARD's October 2002 Appeal on grounds that the ZBA lacked jurisdiction because there was no "Action of the Director" from which CARD appealed. CARD submitted an opposition memorandum to the Director's Motion to Dismiss on December 5, 2002, in which CARD identified, for the first time, the issuance of the CUP as a challenged action of the Director.

. . . .

18. The ZBA issued its Findings of Fact, Conclusions of Law, and Decision and Order with respect to the October 2002 Appeal on July 31, 2003 in which it granted the Director's Motion to Dismiss and dismissed CARD's appeal on grounds, *inter alia*, that CARD's appeal failed to challenge an "Action of the Director," and that even if the appeal was from the issuance of the CUP, it had not been filed within the thirty-day mandatory filing period.

Although the written order dismissing the October Appeal was not issued until July, apparently the ZBA voted to dismiss the appeal on January 30, 2003,[5] on the grounds that the Petitioners had failed to file their appeal concerning the CUP within the thirty-day mandatory appeal filing deadline.[6]

### 3. CARD's second appeal and lawsuit

Before the ZBA had issued its Findings of Fact, Conclusions of Law, and Decision and Order on CARD's first appeal, CARD filed a lawsuit in circuit court, as well as a second appeal by letter to the ZBA.

#### a. *The Lawsuit*

With respect to CARD's lawsuit, the circuit court stated:

17. On December 5, 2002, CARD initiated a lawsuit in the First Circuit Court, State of Hawai'i, captioned *CARD v. City & County of Honolulu, et al.*, Civil No. 02–1–2831–12 (the "CARD Lawsuit").

. . . .

20. On December 23, 2002, CARD filed a First Amended Complaint for Declaratory and Injunctive Relief in the CARD Lawsuit that challenged the Department's issuance of the CUP as violations of the same LUO provisions identified in the December 2002 Appeal: LUO § 21–2.90–2(a)(1) (Count One: permitted use); § 21–2.90–2(a)(2) (Count Two: suitable site); § 21–2.90–2(a)(3) (Count Three: no alteration of surrounding area); § 21–2.90–2(a)(4) (Count Four: contribution to general welfare of neighborhood); § 21–2.902(b) (Count Five: failure to impose additional requirements and conditions); § 21–2.90–2(d) (Count Six: failure to condition various issues regarding traffic, access, parking, etc.) and § 21–21–1.20(a) (Count Seven: failure to regulate land use in appropriate manner).

This lawsuit was dismissed by final judgment entered on September 16, 2003, pursuant to stipulation of the parties.

#### b. *The Second Appeal (The "December Appeal")*

The circuit court summarized CARD's second appeal to the ZBA as follows:

19. CARD initiated a second appeal by letter dated December 13, 2002 to ZBA Chair R. Brian Tsujimura that specifically challenged the issuance of the CUP ("De-

---

5. Although the record does not contain an acknowledgment of this action from the ZBA itself, both CARD and the DPP Director recite this January dismissal of CARD's appeal.

6. *See infra* Section III.B. discussing thirty-day deadline.

cember 2002 Appeal" or "Case No. 2003/ZBA–1").

. . . .

21. The Director and Wal–Mart moved to dismiss the December 2002 Appeal on January 29, 2003 and February 6, 2003, respectively. In its opposition filed on February 18, 2003, CARD argued that the ZBA had jurisdiction over its appeal because CARD should have been, but was not, notified in writing of the Director's issuance of the CUP, and alternatively, that CARD had appealed to the ZBA within 30 days of receiving actual notice that the permit was issued.

22. The ZBA issued its Findings of Fact, Conclusions of Law, and Decision and Order with respect to the December 2002 Appeal on July 31, 2003. The ZBA granted the Director's and Wal–Mart's Motions to Dismiss and denied CARD's appeal on grounds that CARD's petition was not timely filed.

At its hearing on February 27, 2003, the ZBA voted to dismiss the December appeal on the ground that it was not filed within the thirty-day mandatory appeals filing deadline.

### 4. CARD's unsuccessful appeal to the circuit court of the two ZBA rulings rendered on July 31, 2003

CARD subsequently appealed the ZBA's rulings—which denied both of CARD's appeals to that agency—to the circuit court, as recounted by the circuit court:

23. On August 28, 2003, CARD filed an appeal to the First Circuit Court for the State of Hawaiʻi in Civil No. 04–1–1290–07 ("CARD I") appealing from the "[July] 31, 2003 final actions of the Zoning Board of Appeals of the City and County of Honolulu ... issuing Findings of Fact, Conclusions of Law, Decisions and Orders upholding the Director of Department of Planning and Permitting's approval of Conditional Use Permit (Minor) No. 2002/CUP–54 ... (ZBA Case Nos. 2002/ZBA–2 and 2003/ZBA–1)." CARD also sought a declaration that the CUP was erroneously granted by the Director because the CUP application did not comply with the LUO. The First Circuit Court affirmed the ZBA's decisions and orders in ZBA Case Nos. 2002/ZBA–2 and 2003/ZBA–1, dismissed CARD's claims for declaratory relief with prejudice, and entered final judgment against CARD on March 23, 2004. In its conclusions of law, this Court stated that:

6. CARD's October 2002 Appeal and December 2002 Appeal were properly dismissed as untimely because both were filed after the 30–day deadline of September 8, 2002 had lapsed.

7. The fact that CARD members attended Neighborhood Board meetings where they voiced concerns about the Project did not require the Department to provide such CARD members with written notice that the CUP had issued. CARD members failed to avail themselves of Department mechanisms that would have provided notice of the application for and the issuance of the CUP, including the right to inspect the public records at the Department and to request notification of decisions regarding the Project pursuant to Department Rule § 6.2.

8. On the facts before the Court, the 30–day appeals period established by LUO § 21–1.40 and ZBA Rule § 22–2 cannot be tolled.

9. The timely filing of a notice of appeal with an administrative agency is fundamental to the agency's jurisdiction and where the statutory time requirement for filing a notice of appeal has not been met, the appeal must be dismissed. *See Korean Buddhist Dae Won Sa Temple of Hawaiʻi, Inc. v. ZBA,* 9 Haw.App. 298, 303, 837 P.2d 311, 313 (1992), *overruled on other grounds, Rivera v. Dept. of Labor & Indus. Relations,* 100 Hawaiʻi 348, 352 n. 7, 60 P.3d 298, 302 n. 7 (2002).

10. Having failed to timely challenge the action of the Director in issuing the CUP under the LUO in its appeals to the ZBA, CARD may not circumvent the administrative appeals process and deadline requirements by bringing a declaratory action in this court that similarly challenges the Director's actions.

*See Koʻolau Ag. Co., Ltd. v. Commission on Water Res. Mgmt.*, 83 Hawaiʻi 484, 487, 493, 927 P.2d 1367, 1370, 1376 (1996).

CARD did not appeal from the final judgment that this Court entered.

### B. *CARD's Request for a Declaratory Ruling*

This appeal concerns the decision of the DPP Director not to issue a declaratory ruling, which was affirmed by the circuit court. CARD petitioned DPP for a declaratory ruling on March 6, 2003, subsequent to the ZBA's vote to dismiss its first, October appeal (No. 2002/CUP–54) and its second, December appeal challenging the approval of the CUP (No. 2003/ZBA–1), and after CARD had initiated the December lawsuit alleging LUO violations and public and private nuisance claims.[7]

In its petition for a declaratory ruling, which CARD filed pursuant to HRS § 91–8 and DPP Rule § 3–1,[8] CARD stated, in the first paragraph of the letter, that it was "submit[ting] this petition for a declaratory ruling as to the applicability of certain provisions of the [LUO] to the 317,000 square-foot Wal–Mart/Sam's Club development proposed for the Keeaumoku Superblock. . . ." In the introduction section, CARD stated that "Petitioner requests that the Director review the *applicable* regulations and issue a Declaration that (1) the Conditional Use Permit (minor) is void; (2) the Project violates the existing zoning regulations." (Emphasis added.) In the body of the petition, CARD requested declaratory rulings on six specific issues, five of which pertained to the CUP. These requests were listed under the heading "Specific Requests for Declaratory Relief," as follows:

1. The Department Improperly Accepted and Approved the Application for a Conditional Use Permit (Minor)

. . . .

2. Petitioners Request A Declaratory Ruling that the Wal–Mart Owners Did Not submit the Required Plan of Proposed Structures When applying for the CUP (Minor)

. . . .

3. Petitioners Request a Declaratory Ruling that the Department Did Not Consider the Four General Requirements When Approving the Application

. . . .

4. Petitioners Request a Declaratory Ruling that the Department Did Not Consider Evidence in Support of or Against the Four General Requirements When Approving the Application

. . . .

5. Petitioners Request a Declaratory Ruling That the Proposed Use Is Not Permitted as a Conditional Use in the Underlying Zoning District and Does Not Conform to the Requirements of this Chapter

. . . .

 (a) The site is not suitable for the proposed use considering size, shape, location, topography, infrastructure and natural features

 . . . .

 (b) The proposed use will alter the character of the surrounding area in a manner substantially limiting, impairing or precluding the use of surrounding properties for the principal uses permitted in the underlying zoning district

 . . . .

 (c) The use at its proposed location will not provide a service or facilities which will contribute to the general welfare of the community-at-large or surrounding neighborhood

 . . . .

---

7. Prior to its petition for a declaratory ruling, CARD, in a February 24, 2003 letter addressed to the Director of the DPP, requested that the Department issue a cease and desist order to halt the Project based on alleged "ongoing violations of the Honolulu Land Use Ordinance ("LUO"), R.O.H. Chapter 21[.]" The Department denied this request on March 10, 2003, noting that the issues raised in the request would be addressed in connection with the petition for declaratory ruling. CARD appealed this denial but withdrew its appeal on September 19, 2003.

8. *See infra* Section III.B. and note 12.

(d) The Acting Director Improperly Failed to Consider the Impacts of the Project on the Community

. . . .

(e) The Acting Director Improperly Failed to Condition Permitting on Mitigation of Impacts of the Project on the Community

. . . .

6. Petitioners Request a Declaratory Ruling that the Project as Described Cannot Meet the BMX-3 Zoning Requirements

In response, on April 30, 2003 the Director issued Findings of Fact, Conclusions of Law and a Declaratory Ruling. Rejecting all requests for declaratory rulings with respect to the already-accepted CUP, the Director stated:

C. *Partial Refusals to Issue Declaratory Ruling:* In accordance with Section 3–5(5) of the rules, the Director refuses to issue a declaratory ruling regarding *any* matter pertaining to the approval of the [CUP] (Petitioner's "specific requests" Nos. 1 through 5). Although the Director maintains that the CUP was properly accepted, reviewed and issued, the Director may refuse to issue a declaratory ruling pursuant to Section 3–5(3) for good cause. Accordingly the petition for declaratory ruling concerning any matter directly related to the approval of the CUP for joint development of the site is properly refused for the following reasons:

1. The Petitioners have already filed two appeals (Nos. 2002/ZBA–2 and 2003/ZBA–1) with the Zoning Board of Appeals (ZBA) challenging the approval of the CUP for joint development of the site. See Part C.1 of the FINDINGS contained herein. In both cases, the ZBA ruled that the Petitioners failed to meet the mandatory appeal filing deadline specified under Section 22–2(a), of the Rules of the Zoning Board of Appeals ("ZBA rules") and LUO Section 21–1.40.

2. Further, Section 22–7 of the ZBA rules explicitly prevents any waiver of the mandatory appeal filing deadline.

3. A decision rendered on a petition for declaratory ruling is appealable by the ZBA (see Section 21–1, ZBA rules, definition for "Action of the director"). If the Director were to grant a declaratory ruling on any matter related to the CUP, then the Petitioners would in essence be provided an opportunity to circumvent the ZBA's mandatory appeal filing deadline and the LUO, effectively achieving a "second bite at the same apple." To hold otherwise would violate the purpose and intent of the ZBA's mandatory appeal filing deadline and the LUO. And, this would certainly open the floodgates for a review of any action ever taken by the director, merely by requesting a declaratory ruling on the matter.

In the remainder of its ruling, the Director addressed the sixth specific request for declaratory relief raised by CARD, the substance of which is not relevant to this appeal.

CARD subsequently appealed the Director's refusal to issue a declaratory ruling to the ZBA, and then to the circuit court:

28. On May 9, 2004, CARD appealed the Directors's refusal to issue a declaratory ruling with respect to matters pertaining to the CUP to the ZBA. Certain members of the ZBA twice moved to sustain the portion of the appeal pertaining to the Director's refusal to issue a declaratory ruling relating to the CUP at hearings held on September 25, 2003 and October 9, 2003, but the decisions by the ZBA on those motions were split, with two members for and two members opposed. Because there was no majority vote on the Director's refusal to issue a declaratory ruling relating to the CUP at two separate meetings of the ZBA, CARD's appeal on that issue was denied pursuant to ZBA Rule § 21–6(3). On June 17, 2004 the ZBA issued its written Findings of Fact Conclusions of Law, and Decision and Order in Case No. 2003/ZBA–9.

29. On July 15, 2004, CARD timely filed the instant appeal from the ZBA's decision upholding the Director's refusal to issue a declaratory ruling regarding the approval

of the CUP in Case No. 2003/ZBA–9 (the "Appeal").

### C. *The Circuit Court's Conclusions of Law*

In its March 30, 2005 final judgment, the circuit court affirmed the decision and order of the ZBA in case number 2003/ZBA–9. Before proceeding to the merits of CARD's claim, the court ruled that CARD was not precluded by res judicata or collateral estoppel from appealing the denial of its request for a declaratory ruling, despite the circuit court's dismissal with prejudice of CARD's prior claims in the appeal for failing to meet the thirty-day deadline under LUO § 21–1.49 and ZBA Rule § 22–2. Regarding the merits of CARD's appeal, the circuit court made the following conclusions of law:

8. While there is no mandatory deadline for a person to petition an agency for a declaratory ruling regarding an underlying order or decision of that agency pursuant to HRS § 91–8, equitable principles of laches can be applied to such a petition. *See Swire Properties (Hawai'i), Ltd. v. Zoning Board of Appeals,* 73 Haw. 1, 6 n. 4, 826 P.2d 876, 878 n. 4 (1992) ("[S]ince proceedings for declaratory relief have much in common with equitable proceedings, the equitable doctrine of laches has been applied in such proceedings." 22A Am.Jur.2d *Declaratory Judgments* § 185 (1988) (footnotes omitted). *See also Small v. Badenhop,* 67 Haw. 626, 701 P.2d 647 (1985) (equity aids the vigilant)).

9. Department Rule § 6.2 was amended by 1993 after the *Swire Properties* decision was rendered to allow, "upon request," any interested person to receive notice of written decisions of the Director, yet no CARD member availed himself, herself, or itself of this opportunity to receive such notice. Possessing knowledge of the potential development of the Project, CARD's failure to request notice of written decisions of the Director pursuant to Department Rule § 6.2 indicates that CARD members slept on their rights and invokes the doctrine of laches.

10. Having failed to timely avail themselves of multiple opportunities and procedures to timely challenge the issuance of the CUP, CARD's delay in filing its petition on March 6, 2003—approximately seven months after the Director issued the CUP and nearly six months after Wal-Mart openly commenced construction by erecting a construction fence around the Project—indicates that CARD was not vigilant in petitioning the Director for a ruling on the CUP. Consequently, it is not equitable to allow CARD to seek yet another review of the CUP after failing to timely avail itself of prior opportunities to review the CUP.

11. Under Department Rule § 3–5, the Director has discretion to refuse to issue a declaratory ruling for "good cause," or when such a ruling "may adversely affect the interests of the city in any litigation which is pending or may reasonably be expected to arise." CARD had already initiated litigation against the City in the CARD Lawsuit when it petitioned the Director for a declaratory ruling and had multiple challenges of the CUP pending before the ZBA.

12. The Director's refusal to issue a declaratory ruling on duplicative matters raised in CARD's petition for a declaratory ruling was therefore not an abuse of his discretion under Department Rule § 3–5(3) and (5). *See Korean Buddhist Dae Won Sae Temple,* 87 Hawai'i at 231, 953 P.2d at 1329 ("Director was correct in concluding that it would be a waste of time and effort to duplicate his consideration of the same issues in the context of a request for a declaratory ruling" where issues raised were " 'substantially the same' as those relating to the various variance applications."); *cf. Haas & Haynie Corp. v. Pac. Millwork Supply, Inc.,* 2 Haw.App. 132, 134, 627 P.2d 291, 293 (1981) ("It is well-settled that courts will not entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, an action or proceeding to which the same persons are parties and in which the same issues may be adjudicated.") (citing 22 Am. Jur.2d *Declaratory Judgments* § 16 (1965), for the proposition that "[u]nder the general rule, a declaratory judgment is not a

proper mode of determining the sufficiency of legal defenses to a pending action").

13. Additionally, the Director's decision to decline to rule on CARD's petition was not an abuse of his discretion pursuant to HRS § 91–8 because the petition did not seek the determination of a *prospective* action of the Department in its interpretation of the LUO; rather, CARD requested the Director to determine the propriety of the Director's *past* action in approving the CUP under the LUO, which CARD had previously and repeatedly challenged in multiple forums. *See Fasi v. State Public Employment Relations Bd.*, 60 Haw. 436, 443, 591 P.2d 113, 117 (1979) (section 91–8 declaratory petition involves a question "relevant to some action which the [agency] might take in the exercise of the powers granted by [statute]").

14. Consequently, the ZBA's affirmance of the Director's decision and dismissal of CARD's appeal in Case Number 2003/ZBA–9 was not arbitrary, capricious, or otherwise contrary to law.

CARD filed a timely notice of appeal on April 29, 2005.

## II. *STANDARDS OF REVIEW*

A. *Secondary Appeal*

■ Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [ (1993) ] to the agency's decision.

*Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan*, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Bragg v. State Farm Mutual Auto. Ins.*, 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996)) (alteration in original). HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the sub-

stantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983)).

B. *Statutory Construction*

■ Statutory interpretation is "a question of law reviewable *de novo*." *State v. Levi*, 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). This court's statutory construction is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Peterson v. Hawaii Elec. Light Co., Inc.*, 85 Hawai‘i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999) (block quotation format, brackets, citations, and quotation marks omitted).

When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." *Id.* (quoting HRS § 1–15(1) (1993)). Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law. *See* HRS § 1–15(2) (1993).

### C. *Construction of Administrative Rules*

 The general principles of construction which apply to statutes also apply to administrative rules. As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning. *International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 323, 713 P.2d 943, 950 (1986) (citations omitted).

*Allstate Ins. Co. v. Ponce*, 105 Hawai‘i 445, 454, 99 P.3d 96, 105 (2004) (quoting *In re Doe Children: John, Born on January 27, 1987, and Jane, Born on July 31, 1988*, 105 Hawai‘i 38, 53, 93 P.3d 1145, 1160 (2004) (quoting *In re Wai‘ola O Moloka‘i, Inc.*, 103 Hawai‘i 401, 425, 83 P.3d 664, 688 (2004) (quoting *Lee v. Elbaum*, 77 Hawai‘i 446, 457, 887 P.2d 656, 667 (App.1993)))).

### D. *Review of DPP Refusals to Issue a Declaratory Ruling*

Under HRS 91–14(g)(6), an administrative agency's discretionary determinations will not be disturbed unless "[a]rbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion." However, only discretionary decisions

of agencies receive this deferential level of review. In this regard, this court has stated:

> The standard of review for administrative agencies ... consists of two parts: first, an analysis of whether the legislature empowered the agency with discretion to make a particular determination; and second, if the agency's determination was within its realm of discretion, whether the agency abused that discretion (or whether the agency's action was otherwise "arbitrary, or capricious, or characterized by ... [a] clearly unwarranted exercise of discretion," HRS § 91–14(g)(6)). If an agency determination is not within its realm of discretion (as defined by the legislature), then the agency's determination is not entitled to the deferential "abuse of discretion" standard of review. If, however, the agency acts within its realm of discretion, then its determination will not be overturned unless the agency has abused its discretion.

*Paul's Elec. Serv., Inc. v. Befitel*, 104 Hawai‘i 412, 417, 91 P.3d 494, 499 (2004) (internal citation omitted).

 The abuse of discretion standard should apply to the DPP Director's decision regarding whether to refuse to issue a declaratory ruling, because the legislature empowered the DPP with discretion over its declaratory ruling procedures. HRS § 91–8, which governs the declaratory ruling procedure, establishes that "[e]ach agency shall adopt rules prescribing the form of the petitions and the *procedure for their* submission, *consideration, and prompt disposition.*" (Emphasis added.) A refusal to issue a declaratory ruling is a manner of disposing of the petition. *See Lingle v. Hawai‘i Government Employees Association, AFSCME, Local 152*, 107 Hawai‘i 178, 190, 111 P.3d 587, 599 (2005) (Acoba, J., concurring) ("Orders refusing to issue a declaratory ruling would fall within the definition of actions 'disposing' of petitions.").

 By empowering agencies generally with the authority to adopt rules regarding the manner in which declaratory ruling petitions shall be considered and disposed of, the legislature has granted agencies discretion with regard to the consideration of de-

claratory rulings. The boundaries of that discretion, which normally are defined by the legislature, may in such cases be established with reference to the agency rules themselves, or by reading the statute and the agency rules in tandem. *See Paul's Elec.,* 104 Hawai'i at 417–18, 91 P.3d at 499–500 ("The boundaries of an agency's discretion are established by the legislature ... and these statutory boundaries will likely assist a reviewing court in defining 'discretion' when the court examines an agency's action for an abuse of discretion." (Citation omitted.)).[9]

▇▇ In this case, DPP Rule § 3–5 governs DPP refusals to issue a declaratory ruling, making that decision discretionary with the DPP Director, within the parameters of five enumerated reasons. The rule provides:

§ 3–5 *Refusal to issue declaratory ruling.* The director may refuse to issue a declaratory ruling where:

(1) The question is speculative or hypothetical and does not involve existing facts, or facts which can reasonably be expected to arise within the next year.

(2) The petitioner's interest is not of the type which would give him/her standing to maintain an action if he/she were to seek judicial relief.

(3) The issuance of the declaratory ruling may adversely affect the interests of the city in any litigation which is pending or may reasonably be expected to arise.

(4) The matter is not within the jurisdiction of the department.

(5) For other good cause.

DPP Rule § 3–5 (1999), *available at* http:// honoluludpp.org/permitinfo/part1.pdf. There-

fore, DPP decisions to refuse to issue a declaratory ruling will be reviewed under the "abuse of discretion" standard, with reference to the language of HRS § 91–8 and the bases for refusal enumerated in the Department rule.

### III. *DISCUSSION*

#### A. *Arguments of the Parties*

Pointing to COLs 9–14 as erroneous, CARD makes three basic arguments as to why the DPP Director's refusal to issue a declaratory ruling was in error, namely that: (1) A petition for a declaratory ruling was a proper procedure, based in part on *Swire Properties (Hawai'i), Ltd. v. Zoning Board of Appeals,* 73 Haw. 1, 826 P.2d 876 (1992); (2) CARD's petition for a declaratory order was timely and the doctrine of laches should not apply; and (3) the Director's decision could not be justified on the grounds of DPP Rule § 3–5(3), which allows the Director to refuse to issue a declaratory ruling where such a ruling "may adversely affect the interests of the city in any litigation." [10]

In response, Wal–Mart argues that: (1) the decision to refuse to issue a declaratory ruling on the matters relating to the CUP was proper, because (a) it was justified on the basis of Department Rule § 3–5(3) and (5), as the ruling requested was a duplicative matter with regards to pending litigation, (b) it was justified on the "good cause" reason that it would be absurd to allow a challenge to a permit issuance by declaratory ruling at anytime in the future when a direct appeal must be filed within thirty days of issuance, and (c) a request for a declaratory ruling under HRS § 91–8 is not a proper procedure to challenge the Director's approval of a minor CUP; and (2) *Swire Properties* does not

9. The legislative history of Section 91–8 also shows that the legislature envisioned that agency decisions regarding whether to issue a declaratory ruling would involve the use of discretion. A report of the House Standing Committee on the bill which would become HRS chapter 91 said this with regard to the declaratory ruling section:

This section would require each agency to adopt rules governing the issuance of declaratory orders. These rules, however, could provide for the agency having some discretionary power to refuse to make a declaratory ruling.

Hse. Stand. Com. Rep. No. 8, in 1961 House Journal, at 659. *See infra* note 16.

10. In connection with this argument, CARD claims that it was error for the lower court to "creat[e] a 'legal defense' or 'other good cause' justification for the DPP's decision," which was not provided by the DPP. Because we hold herein that the declaratory ruling petition was not a proper procedure for seeking review of the DPP's issuance of the CUP, this, along with CARD's second and third arguments, need not be addressed.

require the Director to issue a declaratory ruling on matters pertaining to the CUP in this case.

B. *The Declaratory Ruling Procedure is Not a Proper Means to Seek Review of Specific Agency Decisions.*

■ CARD, having failed to bring an appeal of the CUP issuance within the required thirty-day time-limit, sought review of the CUP issuance via the declaratory ruling petition procedure provided by HRS § 91–8 and accompanying DPP Rule § 3–1. Although styled as a "petition for a declaratory ruling as to the applicability of certain provisions of the [LUO] to the 317,000 square-foot Wal–Mart/Sam's Club development proposed for the Keeaumoku Superblock," in reality five out of six of its specific requests sought a declaration that the CUP was improperly issued. *See supra* Section I.B.[11]

It is undisputed that an appeal of a CUP issuance must take place within thirty days of the mailing or service of the director's decision, pursuant to LUO § 21–1.40 and as provided for in ZBA Rule § 22–2. LUO § 21–1.40 provides:

Appeals from the actions of the director in the administration of the provisions of the LUO shall be to the zoning board of appeals as provided by Section 6–1516 of the charter. Appeals shall be filed within 30 days of the mailing or service of the director's decision.

Likewise, ZBA Rule § 22–2 states as follows:

*Mandatory appeal filing deadline*

(a) A written petition appealing an action of the director must be received at the

department of land utilization within 30 days of the date of mailing or personal service of the director's written decision except that in the case of an appeal relating to the administration of the subdivision ordinance, the petition must be received within 15 days after receipt of the notice of the action.

(b) If the appeal is not timely filed, it shall be dismissed by the board upon the board's own motion or the motion of any party to the proceeding.

■ Based on the text and structure of the statute, its legislative history, and relevant caselaw, we agree with Wal–Mart that the declaratory ruling procedure was not intended to be utilized to seek review of agency determinations that have already been made and which have not been timely appealed.

HRS § 91–8, entitled "Declaratory rulings by agencies," provides that:

Any interested person may petition an agency for a declaratory order as to the *applicability* of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

HRS § 91–8 (emphasis added).[12]

■ As both the title ("Declaratory rulings by agencies")[13] and the pertinent text ("a declaratory order as to the applicability [of a statute, agency rule, or order]") make clear, the declaratory ruling procedure of HRS § 91–8 is meant to provide a means of

---

11. The sixth point, a request for a declaration that "the Project as Described Cannot Meet the BMX–3 Zoning Requirements," received a declaratory ruling from the Director which was affirmed by the ZBA, and not challenged further.

12. DPP Rule § 3–1 describes the subject of a declaratory ruling in substantially similar terms: "Any interested person may petition the director for a declaratory ruling *as to the applicability* of any statute or ordinance relating to the department, or of any rule or order of the department." DPP Rule § 3–1 (emphasis added). The only difference between DPP Rule § 3–1 and HRS § 91–8 is that the DPP rule clearly states that declaratory rulings can only be sought over stat-

utes or ordinances that *relate to the department,* a condition which is only implicit in HRS § 91–8. DPP Rule § 3–1 ("any statute or ordinance *relating to the department,* or of any rule or order of the department" (Emphasis added.)).

13. In the context of declaratory *judgments,* it has been said that "the purpose of such a proceeding [is] to remove uncertainty from legal relations and clarify, quiet, and stabilize them before irretrievable acts have been undertaken, to enable an issue of questioned status or fact, on which a whole complex of rights may depend, to be expeditiously determined...." 26 C.J.S. *Declaratory Judgments* § 3 (1956).

seeking a determination of whether and in what way some statute, agency rule, or order, *applies* to the factual situation raised by an interested person. It was not intended to allow review of concrete agency decisions for which other means of review are available. Reading HRS § 91–8 in a common sense fashion, and bearing in mind the plain meaning of the term "applicability," it cannot seriously be maintained that the procedure was intended to review already-made agency decisions. For such decisions, like the DPP Director's issuance of the CUP to Wal–Mart, the agency has already spoken as to the "applicability" of the relevant law to the factual circumstances at hand—implicitly or explicitly it has found the relevant legal requirements to be met. There is no longer a question of how the relevant laws, in this case the LUO, "apply." [14]

Use of the declaratory ruling procedural device only makes sense where the applicability of relevant law is unknown, either because the agency has not yet acted upon particular factual circumstances, or for some other reason the applicability of some provisions of law have not been brought into consideration. *Cf. State v. Lucks*, 56 Haw. 129, 133, 531 P.2d 855, 858 (1975) ("We view the term 'applicable offense' as described in Penal Code Section 101(2)(a) to mean an offense that is *applicable to a given set of factual circumstances* that make up a criminal act." (Emphasis added.)).

The structure of Hawaii's Administrative Procedure Act (HAPA), HRS chapter 91, combined with the agency rules governing appeals of actions of directors, confirm this view. The HAPA provides a party with several separate means of seeking review of agency determinations. Two provisions apply to agency rules: (1) under HRS § 91–6, an interested party may petition an agency to adopt, amend, or repeal an existing rule; and (2) under HRS § 91–7, such party may seek a judicial declaration as to the validity of an agency rule. Final agency decisions or orders in contested cases may be appealed to the circuit court as provided in HRS § 91–14.[15]

Given this panoply of review options available to interested parties, each specified to a different type of agency action, it would appear that the legislature intended the declaratory ruling procedure to likewise have a unique and independent role in the statutory scheme. *See State v. Kalani*, 108 Hawai'i 279, 283, 118 P.3d 1222, 1226 (2005) ("[C]ourts are bound, if rational and practicable, to give effect to all parts of a statute, and . . . no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." (Citations omitted.)). We therefore presume that the legislature acted intentionally when it chose the term "applicability" to denote a special type of procedure, whereby an interested party could seek agency advice as to how a statute,

---

**14.** For example, CARD's request for a declaration that "[t]he Department Improperly Accepted and Approved the Application for a Conditional Use Permit (Minor)" or "that the Wal–Mart Owners Did Not submit the Required Plan of Proposed Structures When applying for the CUP (Minor)" both seek declarations as to matters for which the agency has already determined that the LUO's requirements were met—and no question of their "applicability" remains.

**15.** In the context of DPP actions that pertain to the administration of the zoning and subdivision ordinances, like the CUP approval at issue here, appeal must be brought to the ZBA before it is appealable to the circuit court. *See* Revised Charter of Honolulu (RCH) § 6–1516 ("The zoning board of appeals shall hear and determine appeals from the actions of the director in the administration of the zoning ordinances, including variances therefrom, subdivision ordinances

and any rules and regulations adopted pursuant to either." (Citation omitted)). This is because the director's action, which proceeds without the need for an agency hearing, is not a "a final decision or order in a contested case"; such a hearing is provided by the ZBA, which results in a final appealable decision. *See Kona Old Hawaiian Trails Group By and Through Serrano v. Lyman*, 69 Haw. 81, 91–92, 734 P.2d 161, 167–68 (1987) (holding that circuit court lacked jurisdiction where plaintiff appealed directly from county planning director's issuance of special management area minor permit, because director's action was not "a final decision or order in a contested case" and Hawai'i county charter provided that all appeals of director's decision would go the Board of Appeals, which would conduct a hearing—"its decision, unlike that of the director, unquestionably would have been appealable to the circuit court").

agency rule, or order would apply to particular circumstances not yet determined. *See Morgan v. Planning Dep't*, 104 Hawai'i 173, 185, 86 P.3d 982, 994 (2004) ("When a law is enacted, a presumption exists that the words in the statute express the intent of the legislature."). It is therefore inconsistent with the structure of HRS chapter 91 to allow declaratory orders as a means of review of agency decisions.

This interpretation is consonant with our caselaw. Although dealing with a jurisdictional issue not presented here, in *Fasi v. State Public Employment Relations Board*, this court stated that HRS § 91–8 "is designed to provide a means for securing from an agency its interpretation of relevant statutes, rules and orders," and noted that "[t]he only parties necessary to a proceeding under § 91–8 are the petitioner and the agency." 60 Haw. 436, 444, 591 P.2d 113, 118 (1979). This comports with the view propounded here, that the declaratory ruling procedure is intended to allow an individual to seek an advance determination of how some law or order applies to his or her circumstances. *See also Korean Buddhist Dae Won Sa Temple*, 87 Hawai'i at 231, 953 P.2d at 1329 (upholding Department of Land Utilization (DLU) Director's conclusion that "it would be a waste of time and effort to duplicate his consideration of ·the same issues in the con-

text of a request for a declaratory ruling," where party seeking ruling had already raised issues in its variance application and associated litigation).

The legislative history of the HAPA and the caselaw of another jurisdiction are also in accord with the view that the declaratory ruling procedure cannot be used to review decisions that agencies have already rendered. Hawai'i adopted HRS chapter 91, "Administrative Procedure," based on the Uniform ,Law Commissioners' Model State Administrative Procedure Act of 1961.[16] In a prefatory section entitled "Content of the Model State Administrative Procedure Act," the Commissioners outlined what it termed the "major principles embraced in the Act." 15 U.L.A. at 178. Among the six principles was the following:

> (3) Provision for advance determination of the validity of administrative rules, and for "Declaratory rulings," affording advance determination of the applicability of administrative rules to particular cases.

*Id.* at 179.[17] This principle clearly shows that the declaratory ruling procedure was intended for advance determinations of applicability, rather than review of already-made agency decisions. In adopting the HAPA, we presume that the Hawai'i legislature was aware of the Model Act as well as all com-

---

**16.** As Justice Acoba, concurring, recounted in *Lingle v. Hawai'i Government Employees Association:*

> In 1946, the National Conference of Commissioners on Uniform State Laws issued the Model State Administrative Procedure Act. *Model State Admin. Procedure Acts* (amended 1981), 15 U.L.A. 175–76 (Master ed.2000)[.] The Model Act was then revised in 1961 (Revised Model Act). *Id.* at 174. HAPA was modeled after the 1959 draft of the Revised Model Act. Hse. Stand. Com. Rep. No. 8, in 1961 House Journal, at 654.
> . . . .
> The House Committee's report provides a section-by-section analysis of Bill No. 5, with reference to the Revised Model Act. As to the section on declaratory rulings, now codified as HRS § 91–8, the Committee stated,
>> Section 8 of the Revised Model Act has been adopted with the following changes:
>> (a) The amendment to this section changes the style of the language to conform to Section 6 of this bill. The language of this section does not necessarily require an agen-

cy to issue a declaratory order in every instance but is intended to induce them to do so more frequently than they may have been doing in the past. This section would require each agency to adopt rules governing the issuance of declaratory orders. These rules, however, could provide for the agency having some discretionary power to refuse to make a declaratory ruling. Since the refusal in itself would be an agency order, in appropriate cases, application for judicial review on the grounds that denial was an abuse of discretion on the part of the agency may be made.
>> Id. at 658–59.
> 107 Hawai'i at 188–89, 111 P.3d at 597–98 (Acoba, J., concurring) (emphasis omitted).

**17.** The Commissioners also stated:

> There is no good reason why these general principles should not govern throughout the entire administrative structure. They are not details; they are essential safeguards of fairness in the administrative process.
> *Id.* at 179, 111 P.3d 587.

ments related thereto. *Cf. Cowan v. First Ins. Co. of Hawaii, Ltd.*, 61 Haw. 644, 649 n. 4, 608 P.2d 394, 399 n. 4 (1980) ("It is a well-settled rule that the adoption of another state's statute encompasses that state's judicial construction of the statute unless a contrary intent appears."); *State v. Yamasaki*, 91 Hawai'i 163, 165, 981 P.2d 720, 722 (App. 1999) (looking to *Model Penal Code and Commentaries* to "inform [court's] effort to glean the scope of parallel statutes" in Hawai'i). Furthermore, there is clear evidence in the legislative history that the legislature carefully studied the Model Act before adopting it. *See* Stand. Com. Rep. No. 8, in 1961 House Journal, at 654 ("[Y]our Committee has examined and very carefully reviewed the first tentative draft of the revision of the Model State Administrative Procedure Act ... and the comments made by the committee on the revision of said Model State Administrative Procedure Act. The basic structure for this bill in the amended form has been the Revised Model Act."). The language chosen for HRS § 91–8 is substantially similar to that of the Model Act,[18] and the legislature stated that changes made were for stylistic reasons to conform with other parts of the bill, rather than for substantive alteration. *See id.* at 659 ("The amendment to

[Section 8, Declaratory Rulings by Agencies] changes the style of the language to conform to Section 6 of this bill."). The comments on the "Declaratory Rulings by Agencies" section do not indicate an intent to deviate from the model act in terms of the availability of the declaratory ruling procedure. *See supra* note 16.[19]

The view of another jurisdiction that has adopted the Model Act strengthens this conclusion. The Supreme Court of Wisconsin, interpreting a similar Wisconsin provision also derived from the Model Act,[20] has explicitly adopted the position we take here, holding that the declaratory ruling procedure "does not provide a method of review of a determination already made but a method of requesting an agency to make a determination." *Wisconsin Fertilizer Ass'n v. Karns*, 39 Wis.2d 95, 158 N.W.2d 294, 300 (1968). *See also Aiello v. Litscher*, 104 F.Supp.2d 1068, 1073–74 (W.D.Wis.2000) (holding that inmates could not use Wisconsin declaratory ruling procedure to challenge Department of Corrections' dismissal of their complaint under the inmate complaint review system, as this would allow the department to "sit in judgment on a decision made by itself") (citing *Karns*).

18. The 1961 Model Act contained the following provision on "Declaratory Rulings by Agencies":

> Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases.

15 U.L.A. at 267.

19. Although the House Committee Report comment on the Declaratory Rulings section states that it was "intended to induce [agencies] to [issue declaratory orders] more frequently than they may have been doing in the past," it also states that "[t]he language of this section does not necessarily require an agency to issue a declaratory order in every instance," and clearly provides for discretion to refuse to make a declaratory ruling. Stand. Com. Rep. No. 8, in 1961 House Journal, at 659. The Standing Committee also made the following conclusion, based on the comments submitted to it: "That under declaratory rulings by agencies, the agencies would be required to render rulings which most agencies have not been doing in the past." *Id.* at 655. These comments in no way imply that the

declaratory ruling procedure should serve a different function as that suggested by its text or noted by the drafters of the Model Act—rather, they appear to pertain to specific circumstances that the Hawai'i legislature sought to address in introducing broad reforms into its administrative law, *i.e.*, the fact that prior to the law administrative agencies in the state did not regularly issue declaratory rulings. This reluctance of agencies to issue formal declaratory rulings was shared by other states, and the federal government, which led to the reforms embodied in the Model Act. *See* Frank E. Cooper, *State Administrative Law* 240–44 (1965).

20. The Wisconsin statute provides in relevant part:

> Any agency may, on petition by any interested person, issue a declaratory ruling with respect to the *applicability to any person, property or state of facts of any rule or statute enforced by it*.

Wis. Stat. § 227.41(1) (West, Westlaw through 2007 Act 5) (emphasis added). The language at issue in this case is substantially similar to that of the Wisconsin statute, as it focuses on the "applicability ... of any rule or statute," HRS § 91–8.

Based on the foregoing, the circuit court did not err when it affirmed the ZBA decision upholding the DPP Director's refusal to issue a declaratory ruling. Because HRS § 91–8 only allows for declaratory rulings as to questions of "applicability," an administrative agency has no discretion to issue rulings under this section that do not bear on such questions. *See Paul's Elec.*, 104 Hawai'i at 417, 91 P.3d at 499 ("If an agency determination is not within its realm of discretion (as defined by the legislature), then the agency's determination is not entitled to the deferential 'abuse of discretion' standard of review."); *id.* at 420, 91 P.3d at 502 ("If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to *de novo* review."). In fact, such a ruling would be in excess of the DPP's statutorily-defined authority. The DPP Director therefore did not abuse his discretion, under the applicable statute and DPP Rules, when he refused to issue declaratory rulings as to matters involving the CUP application. Moreover, the Director's stated reasons for the denial are in accord with the basic notion of our holding here, that the declaratory ruling procedure may not be used as a means for review of issues that have come before the board and been properly decided.[21]

## C. *Swire Properties Does Not Require A Contrary Result*

CARD argues that *"Swire Properties* is very clear that the § 91–8 Petition is available to interested parties who had not received notice of an action of the Director to obtain review of the Director's action," and notes that CARD "did precisely what the *Swire* Court advised." We disagree.

*Swire Properties* concerned an appeal from a circuit court decision affirming a ZBA ruling in favor of petitioning landowners, who had challenged the action of DLU officials of "initialing" or "checking off" on several building permits as part of a phased development project. 73 Haw. at 3–5, 826 P.2d at 877–78. This court reversed the circuit court on the basis that the ZBA lacked jurisdiction to entertain an appeal of the DLU actions, because the "check offs" were ministerial acts that did not constitute an "action of the director" from which an appeal could be brought under the ZBA Rules Relating to Administrative Procedure. *Id.* at 7–8, 826 P.2d at 879. Rather, this court found that this matter had already been resolved three years prior to the institution of the landowners' appeal, when the DLU issued a letter approving the building height plans of Phase IV of the development project in 1986. *Id.*

In the course of explaining the manner in which DLU decisions may be appealed, the court noted a ZBA rule of the time requiring that any appeal from actions of the DLU director[22] be brought within thirty days of mailing or service of the written decision. *Id.* at 6, 826 P.2d at 878. The court appended a footnote to this rule, upon which CARD relies heavily.

In that footnote—footnote four—this court stated:

**21.** The "good cause" reasons cited by the Director to refuse to issue a declaratory ruling included the following: (1) the Petitioner had already filed appeals to the ZBA but missed the appeals deadline, (2) "Section 22–7 of the ZBA rules prevents any waiver of the mandatory appeal filing deadline," and (3) "If the Director were to grant a declaratory ruling on any matter related to the CUP, then the Petitioners would in essence be provided an opportunity to circumvent the ZBA's mandatory appeal filing deadline and the LUO, effectively achieving a 'second bite at the same apple.' To hold otherwise would violate the purpose and intent of the ZBA's mandatory appeal filing deadline and the LUO. And, this would certainly open the floodgates for a review of any action ever taken by the director, merely by requesting a declaratory ruling on the matter."

**22.** After July 1998, the DPP took over many functions formerly housed in the DLU. The DPP website's Neighborhood Board Information Handbook gives the following entry on the DPP:

Established as of July 1998, reflecting responsibilities formerly housed under Department of Land Utilization, Building Department, and staff from transportation, sewer and engineering programs. As of January, 1999, the former Department of Planning merged into DPP.

Department of Planning and Permitting, City and County of Honolulu, *A View into the Department of Planning and Permitting, Planning and Zoning Activities* 33 (2006), http://www.honoluludpp.org/aboutdpp/view.pdf.

We are aware that this section provides for a thirty day deadline following written notice. Only the applicant for an action gets written notice, generally, and that was Swire Properties. However, one appellee did receive a letter from the DLU, dated September 18, 1986, which specifically stated "[t]he proposed building heights for Phase IV have been reviewed and determined to be acceptable pursuant to PDH Ordinance No. 4421 approved March 3, 1975." In addition, appellees had the option of asking the Director of the DLU for a Declaratory Ruling under the Rules Relating To Administrative Practice and Procedure for the Department of Land Utilization. However, we caution future litigants that, "[s]ince proceedings for declaratory relief have much in common with equitable proceedings, the equitable doctrine of laches has been applied in such proceedings."

*Id.* at 6 n. 4, 826 P.2d at 878 n. 4 (citations omitted).

Notwithstanding the fact that the statements in this footnote are dicta, even taken at their word they do not support the right sought by CARD. CARD argues that the *Swire Property* footnote created a way out of the dilemma faced by would-be challengers who miss the deadline for appeals of Director decisions: by petition for a declaratory ruling.

We disagree. Simply stated, CARD reads too much into footnote four. The *Swire Properties* footnote four dicta was not intended to authorize an untimely "back door" appeal of Director decisions by requesting a declaratory ruling.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's March 30, 2005 final judgment.