*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed**
**Supreme Court**
**SCWC-13-0003629**
**22-MAY-2018**
**08:20 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

KIMBERLY A. PASCO, Respondent/Petitioner-Appellant,

vs.

BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM,
Petitioner/Respondent-Appellee.
_____

SCWC-13-0003629
APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-13-0003629; CIV. NO. 12-1-3294)

MAY 22, 2018

McKENNA, POLLACK, AND WILSON, JJ.,
WITH NAKAYAMA, J., DISSENTING,
WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This case concerns whether an injury suffered by Kimberly

A. Pasco ("Pasco") that arose while she worked as a Public

Health Educator IV for the Department of Health of the State of

Hawaiʻi ("DOH") is a covered injury under Hawaiʻi Revised Statutes ("HRS") § 88-336 (Supp. 2007),[1] which provides service-connected disability retirement benefits under the Employees' Retirement System's ("ERS['s]") Hybrid Plan to Class H public officers and employees, such as Pasco. At issue is whether the Intermediate Court of Appeals ("ICA") erred in ruling that Pasco's injury resulted from an "accident," i.e., an unlooked for mishap or untoward event which is not expected or designed[2] "occurring while in the actual performance of duty at some definite time and place."

We hold that Pasco's permanent incapacitating injuries to her elbow, arm, and hand, which manifested on April 17, 2007 while Pasco was in the actual performance of duty as a public health educator, were the result of an "accident occurring while in the actual performance of duty at some definite time and

---

[1]     **Service-connected disability retirement.** (a) Upon application of a class H member, or the person appointed by the family court as guardian of an incapacitated member, any class H member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no wilful negligence on the member's part, may be retired by the board for service-connected disability. . . .

HRS § 88-336.

[2]     See Lopez v. Bd. of Trs., Emps.' Ret. Sys., 66 Haw. 127, 130, 657 P.2d 1040, 1043 (1983) ("An accident is an unlooked for mishap or untoward event which is not expected or designed." (citing Chun Wong Chu v. Yee Wo Chan, 26 Haw. 785 (1923))). "Accident" is similarly defined in Hawaiʻi Administrative Rule ("HAR") § 6-22-2 (1989) as follows: "'Accident' means an unlooked for mishap or untoward event which is not expected or designed, occurring while in the actual performance of duty at some definite time and place."

place."  We therefore affirm the ICA's July 14, 2016 Judgment on Appeal, entered pursuant to its June 17, 2016 Memorandum Opinion, which vacated the September 17, 2013 "Decision and Order Affirming the Final Decision of Respondent-Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii and Dismissing Petitioner-Appellant Kimberly Pasco's Appeal" and the September 17, 2013 "Final Judgment," and we remand this matter to the Circuit Court of the First Circuit ("circuit court") for further proceedings consistent with the ICA's Memorandum Opinion and this opinion.

## II.  Background

### A.    Factual Background

In 2006, Pasco worked for the DOH as a public health educator who helped start a nutrition program on Kauaʻi, and later expanded it to Maui and the Big Island.  As she did not have a permanent desk, Pasco typed voluminous program reports on a laptop at vacant desk spaces in various DOH departments, as well as the lunchroom and conference room, based on availability.  By March 2007, Pasco was provided an old metal desk at the Kapaʻa Neighborhood Center, as well as a desktop computer to supplement her laptop.  Pasco typically typed two to three hours a day at work, but those hours increased when project deadlines neared.  Specifically, as a program report for

3

a federally funded project was due in mid-April 2007, Pasco's typing increased in the weeks leading up to the deadline to the point that she typed seven hours per day from April 12 to April 17 in an effort to timely complete the report.

According to an April 25, 2007 workers' compensation report completed by a supervisor, on April 17, 2007 at 4:15 p.m. during Pasco's workshift, she was injured when she used her computer keyboard and mouse. That injury, as described by Pasco, was an "instant" "severe throbbing, aching kind of pain," that was located in her right inner elbow and led down to her fourth and fifth fingers, as well as an aching and burning sensation in her fingers. Pasco's right arm, wrist, and hand became so fatigued and painful that she had difficulty using her right arm and hand to do work, and she could not sleep.

This was the first time Pasco had experienced pain in this area of her body, despite extensively typing for three weeks leading up to April 17, 2007, and carrying binders, training materials, and a laptop when traveling interisland bi-weekly in January 2007 to conduct training sessions. Also, prior to April 17, 2007, Pasco did not have any pre-existing injuries to her hands, arms, or elbows.

Following April 17, 2007, Pasco began seeking medical treatment for her injury from physicians and physical or

4

occupational therapists on Kauaʻi, Oʻahu, and the mainland, as the pain would not cease. After briefly returning to work on May 2, 2007, by May 14, 2007, Pasco reported that her left arm began to bother her. She suspected it was because she used voice-activated software to type at work following her injury; however, the software made frequent errors and she used her left hand to manually correct them.

Several of Pasco's treating physicians diagnosed Pasco with medial epicondylitis, also referred to as tendinitis along the medial epicondyle. In a March 31, 2008 independent medical evaluation, however, Dr. Daniel I. Singer concluded Pasco suffered from non-work-related myofascial pain syndrome, which is pain in the soft tissue that is unrelated to tendons or the ulnar or median nerves.

When conservative treatment for medial epicondylitis proved unsuccessful, Pasco underwent left ulnar nerve decompression surgeries at the Mayo Clinic on August 27, 2008 and October 9, 2008. After her surgeries, Pasco began to experience a new type of burning pain in her left arm, and was diagnosed with complex regional pain syndrome, left upper extremity greater than right upper extremity. Pasco continued to experience pain in her un-operated right arm.

**B.   Pasco's Application for Benefits**

On April 13, 2009, Pasco submitted an application for service-connected disability retirement.  In describing her April 17, 2007 accident, Pasco stated:

> During April 2007 I was required to do extensive and unreasonable amounts of typing up to 7 hrs a day to meet project deadlines.  A support staff including a clerk was not given so I injured bi-lateral elbow, arm, hand.  Also materials to train DOH/DOE staff were carried inter-island and this contributed to extensive injury.

In a statement attached to her application, her employer described Pasco's work conditions as: "New office for new program.  Clerk not yet hired, full computers not yet purchased.  Extensive typing on a laptop computer."  Additionally, the employer's account of the accident stated: "Extensive typing on a laptop without assistance of a clerk typist put stress and strain on right arm, wrist, and hand."  The employer also indicated the accident occurred at 4:15 p.m. on April 17, 2007 at the Kapaʻa Neighborhood Center while Pasco was "on duty"; the accident was not the result of Pasco's own willful negligence; Pasco appeared to have suffered a disability as the actual and proximate result of the accident; and that because Pasco was incapable of continued work in the position, her appointment was not extended.

In its report to the Board of Trustees of the Employees' Retirement System ("ERS Board") dated August 19, 2009, the ERS

Medical Board ("Medical Board") concluded that Pasco's incapacitating diagnosis was non-work-related myofascial pain syndrome of the arms, and not the medial epicondylitis that had been diagnosed by several of Pasco's treating physicians. Thus, although there was no dispute that Pasco was permanently incapacitated for the further performance of duty through no "wilful negligence on [her] part," the Medical Board determined that Pasco's incapacity was not the result of an "accident," i.e., "an unlooked for mishap or an untoward event," nor was it the result of an "occupational hazard," i.e., "the cumulative result of a danger or risk inherent in and concomitant to [her] occupation." Accordingly, the Medical Board recommended to the ERS Board that Pasco be denied service-connected disability retirement.

By letter dated December 29, 2009, notice was issued to Pasco that the ERS Board proposed to deny Pasco's application based on the Medical Board's report. In a statement dated February 16, 2010, Pasco, pro se, timely filed an appeal with the ERS Board. A hearing officer was assigned on March 2, 2010, and shortly thereafter, Pasco obtained counsel.

A contested case hearing was held on September 12, 2011. A member of the Medical Board, Dr. Patricia Chinn, testified that in her expert opinion, Dr. Singer's diagnosis of non-work-

7

related myofascial pain syndrome was correct.  Dr. Chinn also clarified that the Medical Board determined that Pasco's condition was not the result of an "accident" only because it did not occur at any definite place and time, as the injury was described in the medical record as a "cumulative or repetitive injury."

The hearing officer issued a Recommended Decision dated April 23, 2012.  As an initial matter, the hearing officer found that Pasco did not have pre-existing injuries to her elbow, arm, and hands prior to April 17, 2007, and that typing was part of Pasco's normal and routine job duties.  The hearing officer disagreed with the Medical Board and concluded that Pasco's incapacitating diagnosis was not myofascial pain syndrome. Rather, the hearing officer found Pasco's testimony credible when she testified "that the unnatural positioning of elbows . . . while typing for extended periods of time . . . result[ed] in elbow pain."  Further, as Pasco's pain was specific and not diffused, and as several of Pasco's treating physicians with various specializations from Kaua'i, Honolulu, and Minnesota consistently diagnosed Pasco with medial epicondylitis, the hearing officer found Pasco initially had medial epicondylitis due to extensive typing, which led to complex regional pain syndrome, ultimately incapacitating her.  Additionally, the

hearing officer found that Pasco was not a malingerer as she diligently pursued many courses of treatment, including surgery as a last resort.

Nevertheless, the hearing officer concluded that the "overuse of Petitioner's arms over a period of time did not constitute an 'accident' and there was no occupational hazard." The hearing officer opined that as the overuse of Pasco's arms took place over a period of time, it did not occur at a "specific time and place" and thus did not constitute an "accident." Furthermore, in her opinion the hardships faced by Pasco, such as lacking a permanent desk, typing long hours, or transporting heavy materials were not hazards unique to Pasco's job, and therefore did not constitute an occupational hazard.

As to the issue of whether an "accident" occurred, the hearing officer distinguished Pasco's circumstances from those in Myers v. Board of Trustees, Employees' Retirement System, 68 Haw. 94, 704 P.2d 902 (1985), a case in which this court affirmed the award of service-connected disability benefits to an employee who hurt his back when lifting a coffee pot, by noting that the employee in Myers suffered his injury from a single lifting, and not from multiple liftings or overuse over a period of time. The hearing officer also appeared to reject the notion that any "accident" could occur due to overuse over a

9

period of time by noting that the Supreme Court had determined in Lopez, 66 Haw. 127, 657 P.2d 1040, that "an accident did not occur when [an] employee's incapacitation was due to work pressures and stresses over a period of time."

Ultimately, the hearing officer recommended that the ERS Board reject the Medical Board's finding that Pasco's incapacitating diagnosis was myofascial pain syndrome, and concluded instead that Pasco suffered from medial epicondylitis, leading to complex regional pain syndrome. In all other respects, the hearing officer recommended the findings and certification of the Medical Board dated August 19, 2009 be affirmed, and Pasco be denied service-connected disability retirement benefits.

The ERS Board adopted the hearing officer's Recommended Decision as its Proposed Decision dated June 22, 2012. Upon consideration of Pasco's exceptions, the Medical Board's opposition to those exceptions, Pasco's supplemental memorandum, and the parties' oral argument regarding the exceptions at a hearing on November 13, 2012, the ERS Board issued its Final Decision on December 19, 2012. The Final Decision affirmed the Proposed Decision, adopted the Recommended Decision, and denied Pasco's application for service-connected disability retirement benefits.

10

## C.    Circuit Court Proceedings

Pasco timely filed an appeal with the circuit court[3] on December 26, 2012.  In her opening brief filed on April 12, 2013, Pasco's points of error were solely based on whether the ERS Board erred in denying Pasco service-connected disability retirement benefits "on the basis that Petitioner had failed to prove by the preponderance of the evidence that her permanent incapacitation was the natural and proximate result of an accident at some definite time and place."  Oral argument was held on August 15, 2013.

On September 17, 2013, the circuit court issued its "Decision and Order Affirming the Final Decision of Respondent-Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii and Dismissing Petitioner-Appellant Kimberly Pasco's Appeal."  The circuit court concluded that Pasco's excessive keyboarding, whether over weeks or months, does not describe or constitute an accident occurring while in the actual performance of duty at some definite time and place within the meaning of HRS § 88-336.  Final Judgment was entered on September 17, 2013.

## D.    ICA Proceedings

Pasco timely filed a notice of appeal on September 27, 2013.  In its June 17, 2016 Memorandum Opinion, the ICA noted

---

[3]    The Honorable Rhonda A. Nishimura presiding.

that HRS § 88-336 uses analogous and identical language to that used in HRS § 88-79,[4] and that, as clarified by the Supreme Court in Panado v. Board of Trustees, Employees' Retirement System, 134 Hawaiʻi 1, 332 P.3d 144 (2014), the exact moment of injury need not be identified to conclude that an "accident" occurred for the purposes of HRS § 88-79. See Pasco v. Bd. of Trs. of the Emps. Ret. Sys., No. CAAP-13-0003629, at 8-9 (App. June 17, 2016) (mem.).

Specifically, in Panado, we rejected the ERS Board's argument that "the word 'definite' in 'definite place and time' requires a showing of the 'specific time and place' at which [Panado's] injury occurred." 134 Hawaiʻi at 13, 332 P.3d at 156. In Panado, the employee had satisfied the statutory requirement that an accident had occurred "while in the actual performance of duty at some definite time and place" by establishing that she was injured some time during her October 8-9, 2004 work shift. Id.

Based on Panado, the ICA concluded here that Pasco was able to identify a "definite" time and place of her work-related injury:

> Pasco described her injury as resulting from extensive keyboarding that was required at her job as the cause of her disability. She could point to the period of time,

---

[4]    HRS § 88-79 is the service-connected disability retirement statute for Class A and Class B members of the ERS, whereas HRS § 88-336 is the service-connected disability retirement statute applicable to Class H members.

12

> "April 2007" when this activity intensified, leading up to the point, on April 17, 2007, that the pain from her injury was so severe that it caused her to seek medical attention. Her employer, DOH, did not contest these assertions.

Pasco, mem. op. at 9. Accordingly, the ICA vacated the circuit court's September 17, 2013 "Decision and Order . . ." and "Final Judgment," and remanded the case to the circuit court with directions to vacate the ERS Board's denial of disability retirement to Pasco and for further proceedings consistent with its decision.

## E.   Issues on Certiorari

The ERS Board raises two questions on certiorari:

> A.   Did the First Circuit Court and ERS Board err in concluding that Pasco's overuse of her arms in typing and transporting training materials over weeks and months did not constitute an "accident occurring while in the actual performance of duty at some definite time and place" within the meaning of HRS § 88-336(a) and [Hawaiʻi Administrative Rules ("HAR")] § 6-22-2?
>
> B.   Was the First Circuit Court right or wrong in determining that the ERS Board was not clearly erroneous in finding that Pasco had failed to prove by a preponderance of the evidence that her permanent incapacity was the "natural and proximate result" of an accident as required by HRS § 88-336(a)?

The ERS Board argues that it did not agree or stipulate that Pasco was injured on April 17, 2007. Rather, the ERS Board argues that Dr. Chinn and the Medical Board had agreed with Dr. Singer that Pasco suffered from a pain syndrome not directly related to work. As such, the ERS Board distinguishes Pasco's case from Panado because the parties in Panado had stipulated that the applicant-employee had been injured during a specific

13

workshift.

The ERS Board also argues that because Pasco's injury "developed over weeks and months," it was not the result of a discrete event that occurred at a fixed time and place, which is required under the statute.  The ERS further argues that because Pasco claims to have been injured while performing her regular work duties, "[t]he only thing that was unexpected or unforeseen was that Pasco began to have pain symptoms" while working, which does not amount to an "accident" for service-related disability retirement.  The ERS Board also asserts that because the ERS Board did not stipulate that Pasco's permanent incapacity was the natural and proximate result of her "claimed accident," the ICA erred in concluding otherwise.

Pasco asserts in her opposition brief that the ICA was correct to apply Panado to Pasco's case.  Pasco also appears to suggest that various workers' compensation cases, such as Van Ness v. State of Hawaiʻi, Department of Education, 131 Hawaiʻi 545, 319 P.3d 464 (2014), and Lawhead v. United Air Lines, 59 Haw. 551, 584 P.2d 119 (1978), are also applicable to her case.

### III.  Standards of Review

#### A.    Interpretation of a Statute

Statutory interpretation is a question of law reviewable de novo.  See Citizens Against Reckless Dev. v. Zoning Bd. of

14

Appeals, 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007) (citation omitted).  When construing statutes, the court is governed by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

114 Hawai'i at 193-94, 159 P.3d at 152-53 (citations omitted).

## B.    Administrative Agency Appeals

> Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise.  The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation.

Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (citations and brackets omitted).

## IV.  Discussion

## A.   The ERS Did Not Challenge the Nature of Pasco's Injury

As a preliminary matter, with respect to the second issue asserted by the ERS Board on certiorari, the hearing officer

15

specifically found that Pasco's medial epicondylitis, which initially manifested on April 17, 2007, was due to work-related extensive typing.[5]  As the ERS Board adopted the hearing officer's recommended decision as its final decision, it, too, agreed that Pasco's injury was medial epicondylitis due to extensive typing, eventually leading to complex regional pain syndrome.  Accordingly, any assertions by the ERS Board on this appeal that Pasco's injury was due to non-work-related myofascial pain syndrome, or that her incapacity was not the natural and proximate result of extensive typing, are contrary to its Final Decision.

Therefore, the remaining questions are those contained in the first issue on certiorari:  whether Pasco suffered an

---

[5]    Neither of the parties contests the hearing officer's findings, which include: (1) Pasco did not have pre-existing injuries of her elbow, arm and hands prior to the alleged accident of April 17, 2007; (2) Pasco's testimony was credible when she testified "that the unnatural positioning of elbows . . . while typing for extended periods of time could result in elbow pain"; (3) Pasco began to feel pain in her right arm, wrist, and hand on April 17, 2007 while typing at work; and (4) Pasco did initially have medial epicondylitis, which eventually led to complex regional pain syndrome.

Although Pasco had asserted in her "Application for Disability Retirement" that the carrying of training materials contributed to her injury, the hearing officer did not specifically make such a finding; in contrast, the hearing officer did specifically note that she found Pasco's testimony credible that extensive typing caused her elbow pain.  Also, nothing in the record indicates that Pasco engaged in extensive typing outside of her position.

Given these findings by the hearing officer, the ERS Board's assertion that the hearing officer had found that "Pasco failed to prove by a preponderance of the evidence that her permanent incapacity was 'the natural and proximate result' of her claimed accident of April 17, 2007," is plainly incorrect.

16

"accident occurring while in the actual performance of duty at some definite time and place."

**B.  Pasco Qualifies for Service-Connected Disability Retirement**

HRS § 88-336 provides in relevant part:

> **Service-connected disability retirement.**  (a)  [A]ny class H member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place . . . may be retired by the board for service-connected disability. . . .

Thus, service-connected disability retirement is available to Pasco if she has been permanently incapacitated for duty as "the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place."

**1.  Pasco's injury resulted from an "accident."**

The first issue we must address is whether Pasco's injury was the result of an "accident."  "An accident is an unlooked for mishap or untoward event which is not expected or designed." Lopez, 66 Haw. at 130, 657 P.2d at 1043 (citation omitted). "Accident" is similarly defined in HAR § 6-22-2 as follows: "'Accident' means an unlooked for mishap[6] or untoward event which is not expected or designed, occurring while in the actual performance of duty at some definite time and place."

In denying Pasco's application for service-connected disability benefits by adopting the hearing officer's

---

[6]    "Mishap" is defined as "[a] small accident or mistake, esp. when the consequences are not severe; a relatively trivial instance of bad luck, mischance."  Black's Law Dictionary 1151 (10th ed. 2014).

recommendations, the ERS Board concluded that an "accident" could not occur "over a period of time" because in Lopez, 66 Haw. 127, 657 P.2d 1040, this court concluded that "an accident did not occur when [an] employee's incapacitation was due to work pressures and stresses over a period of time." This conclusion misinterprets Lopez.

Lopez must be viewed in light of Kikuta v. Board of Trustees, Employees' Retirement System, 66 Haw. 111, 657 P.2d 1030 (1983), as both cases were issued by this court on the same day, and each addressed the meaning of "accident" in the service-connected disability retirement context. Indeed, in Myers, 68 Haw. 94, 704 P.2d 902, this court referred to both Lopez and Kikuta to explain why an employee, who was injured when lifting a coffee pot, suffered an "accident." See 68 Haw. at 97 & n.1, 704 P.2d at 904 & n.1.

In Lopez, an industrial safety engineer for the State applied for service-connected disability retirement after he became incapacitated from the further performance of his work due to manic-depressive psychosis. See 66 Haw. at 128, 657 P.2d at 1041. In concluding that the engineer's job pressures and stresses did not constitute an "accident,"[7] this court noted: "[T]here was no unexpected event or unforeseen occurrence which

---

[7]    The court also disagreed with the engineer's argument that his job pressures and stresses amounted to an occupational hazard. See Lopez, 66 Haw. at 129, 657 P.2d at 1042.

18

resulted in the appellant's present incapacity.  It is not enough, under the retirement law, that work pressures and stresses over a period of time were contributory causes of his mental infirmity."  66 Haw. at 131, 657 P.2d at 1043.  The ERS Board focused on this holding from Lopez and took it to mean that the etiology of an "accident" could not develop over a period of time.  However, the Lopez court's reasoning  shows that the court's focus was on the fact that no "unexpected event" or "unforeseen occurrence" had caused the employee's incapacitation.  In Lopez, the claimed "accident" was the result of general job stresses and pressures occurring over several years, but there simply was no "mishap" or "event."

In contrast, the manifestation of Pasco's pain on April 17, 2007 was an "unlooked for mishap or untoward event which [was] not expected or designed."  Whether an event is not expected or designed is viewed from the perspective of the employee, as illustrated by Kikuta, 66 Haw. 111, 657 P.2d 1030.  In Kikuta, the ERS Board had denied benefits to an employee who was on working time when he was stabbed by his brother-in-law and consequently died.  The circuit court affirmed the decision.  On appeal to this court, the ERS Board argued the stabbing was not an "accident," as the employee should have anticipated the attack because he was previously warned that his brother-in-law

19

was "out to get him." 66 Haw. at 113, 657 P.2d at 1032. This court reversed, first noting that the common and accepted definition of "accident" is "an unexpected happening to which the claimant did not culpably contribute." 66 Haw. at 114, 657 P.2d at 1033 (emphasis added). This court went on to observe that the "warning" had been given by the assailant's sister five months prior to the incident, that the employee and the assailant had friendly interactions prior to and since that time, and none of the witnesses on the date of the stabbing had seen or heard anything to indicate the assailant "was looking for trouble" when he first arrived at the employee's workplace. 66 Haw. at 116, 657 P.2d at 1034. Further, there was nothing in the record to indicate that the employee had provoked the assailant. Thus, from the point of view of the employee, the assault was unexpected, and therefore an "accident." 66 Haw. at 117, 657 P.2d at 1034.

Similar to the injury in Kikuta, Pasco's pain, which manifested on April 17, 2007, was not "expected or designed." As in Kikuta, it was "an unexpected happening to which" Pasco "did not culpably contribute." The Dissent, however, suggests that although the Board found that "Pasco had no pre-existing injuries to her hands, wrists, and arms prior to April 17, 2007," because Pasco's sub-optimal work conditions existed since

20

Pasco began the job, "[her] deteriorating physical conditions began far earlier than April 12, 2007" and therefore her "severe elbow injury could not have been unexpected." The record does not demonstrate that Pasco should have expected the level of pain she began experiencing on April 17, 2007, later diagnosed as medial epicondylitis, that would require surgeries and later lead to complex regional pain syndrome. In any event, the ERS Board specifically found that Pasco did not have pre-existing injuries to her elbow, arm, and hands prior to April 17, 2007. Even if she did have a preexisting condition, however, pursuant to Myers discussed below, an "accident" occurs when an unlooked for mishap or unexpected event causes a preexisting condition to become symptomatic. In addition, Myers also stands for the proposition that an unexpected result of a routine performance of duty, without any evidence of external force, or unusual stress or strain, is an "unlooked for untoward event" that constitutes an "accident."

In this regard, the ERS Board appears to argue that the manifestation of pain in the course of performing regular work duties cannot constitute an "accident." However, this court already rejected such an argument in Myers, 68 Haw. 94, 704 P.2d 902. In Myers, a state employee who injured his back on July 25, 1977 when setting down a thirty-five-pound half-full coffee

21

pot as part of his normal and routine preparation for conducting a management training class, and thereafter became disabled due to back pain, was denied service-connected disability retirement by the ERS Board.  The circuit court later reversed the ERS Board's denial of benefits, and the ERS Board appealed, contending that the incident involving the coffee pot was not an "accident" within the meaning of the service-connected disability retirement statute.  68 Haw. at 95, 704 P.2d at 904.  Specifically, the ERS Board argued that an unexpected result of a routine performance of duty, without any evidence of external force, or unusual stress or strain, did not amount to an "unlooked for untoward event" and therefore did not constitute an "accident."  See Myers, No. 10033, ERS Board's Opening Br., at 13, 19 (filed Nov. 9, 1984).

In affirming the circuit court, this court rejected the ERS Board's argument, stating, "Since the July 25, 1977 incident was, beyond question, an unlooked for mishap which was not expected or designed, it was an 'accident[.]'"  Myers, 68 Haw. at 96 & n.1, 704 P.2d at 904 & n.1 (emphasis added).  The weight of the coffee pot or the employee's pre-existing spondylolisthesis and degenerative disks did not affect this court's analysis as to whether an "accident" had occurred.  Myers thus dispels the notion that an external force or unusual

22

strain is required to show that an "accident" befell an employee; rather, an unexpected result of a routine performance of duty may comprise an "accident."[8]  In Myers, the "routine performance of duty" was the employee's routine preparation of coffee for the training meetings he conducted; his "unlooked for mishap" was the "sharp pains across his left lower back into the hollow of his buttocks, and . . . pulsating pain radiating down his right leg" that he experienced when setting down the coffee pot.  68 Haw. at 95, 704 P.2d at 903.

Just as lifting the coffee pot was part of the employee's routine in Myers, here, typing was a normal and routine part of Pasco's job.  Pasco also did not expect the onset of pain on April 17, 2007 while she typed, just as the employee in Myers did not expect to suffer severe back pain from lifting a coffee pot when, prior to the accident, he could lift sixty-five-pound bags of coral sand and ninety-five-pound bags of mortar mix without discomfort of any kind.  See Myers v. Bd. of Trs. of the

---

[8]      Indeed, after our decision in Myers, the ERS Board removed the sentence underlined below from its September 26, 1983 definition of "accident" in effect at the time of the case:

> "Accident" means an unlooked for mishap or untoward event which is not expected or designed, occurring while in the actual performance of duty at some definite time and place. It does not mean the unexpected result of routine performance of duties unless it can be shown that such unexpected result occurred because of some unusual strain or exertion or some unusual condition in the employment."

HAR § 6-22-2 (emphasis added).  The second sentence of the definition was removed effective February 9, 1989.  See HAR § 6-22-2 (am. Feb. 9, 1989).

23

Emps.' Ret. Sys., Civil No. 79302, Findings of Fact & Conclusions of Law & Order, at 2 (filed May 17, 1984), aff'd, 68 Haw. 94, 704 P.2d 902.

Nevertheless, in this case, the ERS Board ruled that Myers was distinguishable because the injury in Myers was caused by a single lifting of a coffee pot, as opposed to multiple liftings. To draw such an adverse conclusion from this distinction, however, does not comport with this court's rejection of the ERS Board's argument in Myers that there must be a showing of some unusual strain or exertion for an "accident" to occur in the routine performance of duty. In sum, routinely performed duties are, by definition, performed regularly and repeatedly; and this court recognized in Myers that an "accident" may occur in the course of such regular and repeated performance of duties. Thus, the onset of Pasco's medial epicondylitis in the course of her regular and repeated performance of her extensive typing duties was an unexpected event constituting an "accident."

**2. Pasco's "accident" occurred "while in the actual performance of duty at some definite time and place."**

The second issue in determining Pasco's eligibility for service-connected disability retirement under HRS § 88-336 is whether her injury occurred "while in the actual performance of duty at some definite time and place." In contrast with the Dissent, we agree with the ICA that Pasco's circumstances are

24

analogous to the relevant facts in Panado, 134 Hawai'i 1, 332 P.3d 144, where we held that an applicant had shown her injury was the result of an "accident" occurring at "some definite time and place" even though the employee could not identify the exact moment of injury.

In Panado, Eden Panado ("Panado"), a computer operator with the City and County of Honolulu, was assigned to print voter registration forms during her October 8 to October 9, 2004 work shift, and she was therefore required to lift between ten and fifteen boxes of paper, and load and unload printers. During the task, which Panado described as her alleged accident, Panado felt pain in her lower back, upper back, shoulder, neck, and right arm. She experienced pain the day after her shift, and on October 10, she was admitted to a hospital emergency room, treated for neck and low back pain, and was subsequently unable to return to work. See 134 Hawai'i at 3-4, 332 P.3d at 146-47. Panado's application for service-connected disability benefits was ultimately denied by the ERS Board.

On appeal, the parties stipulated that Panado was injured during her October 8-9, 2004 workshift. However, Panado also conceded that she could not "pinpoint to the exact box" that was picked up when her injury occurred. 134 Hawai'i at 8, 332 P.3d at 141. Thus, the issue before this court was whether the

25

statute requires an employee to establish the exact moment she was injured.

We held that it does not.  See 134 Hawai'i at 13, 332 P.3d at 156.  We noted that the plain language of the phrase, "definite time and place," does not mean the exact moment of injury, but rather requires that the time and place of injury be "clearly stated or decided; not vague or doubtful."  Id.  Additionally, we observed that "[t]he legislative history does not indicate the 'some definite time and place' language was meant to restrict the award of accidental disability retirement benefits to those claimants who could show an exact moment of injury."  134 Hawai'i at 13, 332 P.3d at 156.  We held that Panado satisfied the "some definite time and place" requirement by establishing that she was injured during her workshift.  Id.

Moreover, this court went on to observe that "there is no indication the legislature intended to categorically exclude coverage for accidents that do not result in immediate symptoms."  134 Hawai'i at 15, 332 P.3d at 158.  We pointed out that the legislature "was concerned with whether an accident occurred during work, not with whether the employee could pinpoint the exact moment of injury."  134 Hawai'i at 14, 332 P.3d at 157 (emphasis added). Referring to the legislature's 1965 expansion of coverage to allow recovery for members who are

26

permanently incapacitated as the cumulative result of an occupational hazard, we also stated:

> Given the legislature's decision to expand coverage, it would appear contrary to legislative policy to restrict coverage by interpreting HRS § 88-79 to categorically preclude claims that do not allege the exact moment of injury, even when it is undisputed that the injury occurred in the performance of work.

Id. We also noted that "there is no indication the legislature intended to categorically exclude coverage for accidents that do not result in immediate symptoms." Id.

To illustrate, we noted:

> If in Myers, the employee had lifted the coffee maker twice, but the onset of the same debilitating condition did not occur until the next day, there is no rational explanation why the employee should be denied retirement benefits because he could not point to which one of the two lifts caused the incapacity. So long as the claimant could establish the incapacity was the proximate and natural result of either of the two lifts, the claimant should be able to qualify for disability retirement benefits under HRS § 88-79. To deny benefits in this situation, either because a claimant cannot point to which exact incident, or because the onset of pain did not occur immediately, would be "unjust and unreasonable in its consequences."

Id.

The ICA correctly held that Panado informs the analysis of Pasco's case. Although Pasco's injury has been characterized as a "cumulative or repetitive stress" injury, as we stated in Panado, the fact that Pasco's "onset of pain did not occur immediately" does not mean it was not "the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place." Although Pasco cannot point to the exact keystroke that caused her to exceed her

27

physiological capacity, the injury occurred "while in the actual performance of duty," during her workshift. The "untoward event" manifested as pain at a "definite time and place" on April 17, 2007. Even if the pain had manifested the day after a workshift, however, as discussed in Panado, that Pasco's injury manifested as arm pain at some time after the moment she exceeded her physiological capacity to perform repetitive work does not mean that her accident did not occur "while in the actual performance of duty at some definite time and place." 134 Hawaiʻi at 14-15, 332 P.3d at 157-58.

## V. Conclusion

For the foregoing reasons, we affirm the Intermediate Court of Appeals' July 14, 2016 Judgment on Appeal, entered pursuant to its June 17, 2016 Memorandum Opinion, which vacated the September 17, 2013 "Decision and Order Affirming the Final Decision of Respondent-Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii and Dismissing Petitioner-Appellant Kimberly Pasco's Appeal" and the September 17, 2013 "Final Judgment," and we remand the matter to the Circuit Court of the First Circuit with directions to vacate the ERS Board's denial of service-connected disability

28

retirement to Pasco and for proceedings consistent with the ICA's

Memorandum Opinion and this opinion.


Patricia Ohara and                    /s/ Sabrina S. McKenna
Brian P. Aburano
for petitioner                        /s/ Richard W. Pollack



Edmund L. Lee                         /s/ Michael D. Wilson
for respondent